Henry K. WILLIAMS, Appellant,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.

No. 10097.

United States Court of Appeals Fourth Circuit.

Argued Jan. 3, 1966.

Decided April 25, 1966.

Carl E. McAfee, Norton, Va. (Cline & McAfee, Norton, Va., on brief), for appellant.

William C. Breckinridge, Asst. U.S. Atty., for appellee.

Before BOREMAN and J. SPENCER BELL, Circuit Judges, and BUTLER, District Judge.

J. SPENCER BELL, Circuit Judge:

This case comes here on appeal by the petitioner, Henry K. Williams, from a summary judgment of the district court affirming the Secretary's denial of benefits under the Social Security Act, sections 216(i) and 223. 42 U.S.C. §§ 416(i) and 423.

The claimant completed three years of grade school, and since that time has spent 33 of his 52 years working in the coal mines. In September of 1962 he was forced to quit work on account of bronchial pneumonia. He has not work-

ed since that time and reports that his sole source of income is "food stamps." The Examiner summarizes his medical findings as follows:

"From a review of all the medical evidence now of record, the Examiner believes that claimant has one principal condition which merits serious attention, namely the impairment of his respiratory system. Claimant's impairments in this respect have been diagnosed by various physicians as follows: (i) 'Pulmonary emphysema—moderate'; (ii) 'Pulmonary fibrosis and emphysema—minimal to moderate'; (iii) 'pulmonary emphysema probably is the explanation for the patient's respiratory symptoms, although it is possible he has some residuals from his past pulmonary infection and there is also the possibility that he has coronary artery disease'; (iv) '1. Anthracosilicosis; 2. Chronic bronchitis; symptomatic;' 'Simple pneumoconiosis, Class I-II, with pulmonary fibrosis and shows some limitation to his spirogram'. A very recent report suggests that claimant may have a rare type of non-contagious mycobacteria which, while distantly related to tubercle bacilli, are entirely different."

From these findings the Examiner drew the following conclusion:

"Viewing the evidence in a light most favorable to claimant, the Examiner believes, as suggested by his letter of April 16, 1964, to the vocational consultant, that claimant may not be able to, or rather for reasons of health should not, continue to work in coal mines where he would be exposed to coal dust or other bronchial irritants. This is in essence also the expert opinion of Dr. Schmidt in his letter of April 22, 1964, to claimant's attorney. Dr. Schmidt writes that in view of the fact that claimant has a simple Class I, II anthracosilicosis, he would profit by no longer being exposed to any further noxious dust since once he goes beyond Class III, he would then have an illness which would progress of its own accord whether he was further exposed or not.

The physician writes that he suggests that claimant 'be out of mining.' The evidence, particularly the objective medical facts such as the clinical findings and the diagnosis, including the expert opinions of the doctors, do not indicate that claimant cannot by reason of his respiratory condition, work at jobs where he would not be exposed to coal or silica dust or other really significant bronchial irritants."

The Examiner called in an expert vocational witness who gave his opinion on the basis of the record and the Examiner's findings with respect to the claimant's medical history. The expert's opinion is reported by the Examiner as follows:

"On the basis of the documentary evidence of record, including all the medical records, the testimony taken at the hearing, and the Examiner's assumption that claimant, for reasons of health, should not work in or about coal mines where his respiratory ailments might be aggravated but still possessed adequate respiratory function to engage in other types of employment, Mr. Fort testified that, in his opinion, during the period in question, claimant possessed the requisite physical and mental facilities to engage in a variety of jobs which, while not available in the town of Norton where claimant resides, are found in Bristol, Virginia, a distance of about 62 miles from Norton, and in the so-called Tri-Cities area generally (Kingsport, Johnson City, Bristol). Mr. Fort testified that, in his opinion, claimant could work as a forming press operator, as an assembler of electric equipment, such as heaters and stoves, as a packer and wrapper, as a watchman, and as a janitor."

The report continues:

"Mr. Fort stated that he was testifying merely to the existence of jobs, rather than present vacancies in jobs, which he believed claimant has the physical and mental facilities to perform and which exist in appreciable numbers in Bristol, Virginia, the near-

est metropolitan area to Norton, and in the Tri-Cities area generally."

Although the medical history offered some evidence to support the claimant's complaints of pains in his chest and extremities, the Examiner rejected these complaints on the grounds that there was not sufficient objective clinical evidence to support the contention that they were significantly disabling. The medical diagnosis also contained evidence of "anxiety" which the Examiner rejected as a normal adaptive reaction to living which did not justify reference of the complainant to a psychiatrist.

■■ Finally, the Examiner concedes that the claimant should not be required to return to his former employment as a miner. Since he has found the claimant disabled as to his former employment it is incumbent upon the Examiner to make specific findings based upon this particular claimant's ability, education, background and experience as to what, if any, kind of work he can perform, and that employment opportunities of this nature are available. Ray v. Celebrezze, 340 F.2d 556, 559 (4 Cir. 1965). Instead the Examiner's report merely refers to the vocational expert's opinion with respect to the jobs which the expert thought the claimant could now perform. Nowhere in the report does the Examiner assert his own opinion in this respect. We may not speculate as to his findings. Indeed to prevent such speculation the Administrative Procedure Act requires that "All decisions (including initial, recommended or tentative decisions) shall become part of the record and include a statement of * * * *findings and conclusions,* as well as the reasons or basis therefor, upon all material issues of fact, law, or discretion presented on the record." (Emphasis added.) 5 U.S.C.A. § 1007(b).

In addition we think the case should also be remanded to the Secretary for further consideration in the light of our opinions in Underwood v. Ribicoff, 298 F.2d 850 (4 Cir. 1964), and Wimmer v. Celebrezze, 4 Cir., 355 F.2d 289 (decided January 3, 1966). Two questions arise which raise serious doubts as to the correctness of the Secretary's decision. The claimant is now 52 years of age. He has a third grade education. He has never engaged in any occupation except coal mining. So far as this record shows the claimant has lived all his life in or around the small rural village of Norton, Virginia. In *Underwood* we pointed to the four elements of proof to be considered in making findings of a claimant's ability or inability to engage in any substantial gainful activity. The fourth of these elements was the claimant's educational background, work history and present age. In *Wimmer* we pointed out that jobs must exist in a reasonably available work market for the claimant.

■ Thus the question is not whether in the opinion of a vocational expert an average individual having the residual abilities of Mr. Williams could perform certain types of work which are performed in or near Bristol, Tennessee. The question is whether the examiner finds that Mr. Williams with his specific background and residual abilities is able to engage in any substantial gainful activity which is available in the area where a person of his residual abilities could reasonably be expected to market his labor. Thomas v. Celebrezze, 331 F.2d 541, 545 (4 Cir. 1964). Furthermore, should the examiner determine that Williams might reasonably be required to move to an industrialized area and there seek employment he must determine whether an illiterate 52 year old with no prior training in any industrial job, with a history of some disability and claims of more, with a rural oriented background would be employable in jobs available in such area. If such jobs are available only in modern industrial employment, consideration must also be given to a realistic analysis of the problems involved in such employment,[1] in addition

---

1. This would include consideration of the effect upon employment policies of such factors as company health insurance plans, workmen's compensation, and other fringe benefits.

to the mere physical capacity to perform the job.

■ We remand the case to the district court with directions to remand it to the Secretary for further proceedings consistent with the views herein expressed.

Reversed and remanded.

BOREMAN, Circuit Judge (concurring specially):

Were it not for the fact that there are no specific findings with respect to one important aspect of the case I would affirm. Under the circumstances, however, I agree that the case should be remanded for further consideration by the Secretary.

The examiner found that claimant was not disabled "within the meaning of the Act," and that claimant's subjective complaints were not supported by the objective medical tests, examinations and diagnoses. Dr. Schmidt, an examining physician, suggested that claimant should not return to the mines and expose himself to noxious dusts because of the risk of aggravating a mild respiratory condition into incurably progressive third-stage silicosis. Dr. Schmidt explained in a letter dated April 22, 1964, to claimant's counsel: "We should, therefore, avoid exposing this gentleman any further. Suggest he be out of mining." The examiner heeded the recommendation as shown in the second quotation in the majority opinion and indicated cognizance of the fact that claimant did have a "respiratory condition" which might be aggravated by further exposure to coal or silica dust or other really significant bronchial irritants. But the majority opinion fails to note the examiner's conclusion, as follows:

" * * * The Examiner believes that the great weight of the objective medical evidence does not show any significant functional impairment of his [claimant's] respiratory system. This conclusion is supported by the pulmonary function studies that were made in July, 1963, by Dr. Gonzalez, the pulmonary function studies that were made in December, 1963, by Dr. Hamilton, and also the pulmonary function studies that were made by Dr. Schmidt in January, 1964."

The examiner observed that at the time Williams filed his application he attributed his inability to work to an impairment of his respiratory system. The examiner stated his further observation:

" * * * He now also attributes his disability to a hurting in his chest, legs, and back, including inability to walk continuously for as much as 15 to 20 minutes or to remain on his feet for more than two hours. The latter are new complaints and do not appear to agree entirely with information that he has furnished to physicians who examined him."

These and other additional complaints were fully considered and discussed by the examiner but the conclusion was reached that, although it was possible or even probable that the claimant had some aches and pains, there was no reasonable basis for concluding that he has any discomfort of "disabling proportion."

In my view, much of the evidence with respect to Williams' physical condition is difficult to summarize since it is medically detailed and apparently not in clearcut and precise terms. This may account for the fact that the District Court, with no more than skeletal references to evidence, sustained the Secretary's decision in a short letter-opinion. But the court ignored Dr. Schmidt's warning, as heeded by the examiner, with reference to the risk of aggravation of a then relatively mild respiratory condition should claimant return to work in the mines.

The only justification for remanding the case is because of the failure to make specific findings with respect to the residual abilities of claimant to engage in substantial gainful activity in the area where he could reasonably be expected to market his labor. Perhaps it could be argued that findings based upon the testimony of the vocational expert are implicit in the broad and sweeping con-

clusions of the examiner to the effect that claimant is not disabled "within the meaning of the Act" but the courts should not be required to resort to searching for findings by implication. The findings should be clear and explicit and to that end I agree that a remand for further consideration is appropriate.