Jose E. **BAERGA**, Appellant,

v.

Elliot **RICHARDSON**, Individually and as Secretary of Health, Education and Welfare, Appellee.

No. 73–1681.

United States Court of Appeals, Third Circuit.

Argued Feb. 14, 1974.

Decided June 19, 1974.

---

**310**

Theodore Clattenburg, Jr., Bruce E. Endy, Jonathan M. Stein, Joseph R. Wenk, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Robert E. J. Curran, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before VAN DUSEN and ADAMS, Circuit Judges, and NEALON, District Judge.

## OPINION OF THE COURT

NEALON, District Judge.

This action was brought in the district court under 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) to review a decision of the Secretary of Health, Education and Welfare denying plaintiff-appellant's application for the establishment of a period of disability and disability insurance benefits pursuant to Sections 216(i) and 223(a) of the Act, 42 U.S.C.A. §§ 416(i) and 423(a).

The district court concluded, "(a)fter a thorough and independent review of the entire 369-page record of this case", that the decision of the Secretary was supported by substantial evidence. We affirm the summary judgment entered for defendant with some observations as will be expressed hereinafter.

Plaintiff was born December 30, 1916, in Puerto Rico and came to this country in 1955. While in Puerto Rico, he worked in a cigar factory, where he made cigars by hand, and also in a sugar refinery "conditioning" sugar cane. Upon arriving in the United States, he was employed briefly in the agricultural field and then worked for about eight years, until 1964, as a busboy in a Philadelphia hotel. The record discloses that, at the age of seven, plaintiff sustained a fracture of the right leg and dislocation of his right hip, resulting in a shortening of his leg. In February, 1964, plaintiff underwent a segmental sigmoid resection for diverticuloma of the sigmoid and has not worked since. Subsequently, after frequent hospital treatments for back and leg complaints, he was confined to Hahnemann Hospital from April 18, 1966, to July 29, 1966, and on May 9, 1966, underwent surgery described as a right hip fusion. He presently walks with a limp and wears a four-inch lift in his right shoe. Degenerative changes of the lumbar spine and pelvis are established in the record without contradiction. The plaintiff last met the earnings requirement of the Act on March 31, 1969, and, therefore, the hearing examiner viewed his alleged "back, leg and stomach" impairments in light of their severity as of that date.

In denying plaintiff's application, the examiner made the following "evaluation" of the evidence:

"The Hearing Examiner is of the opinion that the medical evidence fails to disclose any impairment, of the claimant's back or stomach, as alleged on his application, of a level of severity which would have prevented him from engaging in any substantial gainful activity on or before March

31, 1969, when he was last insured for Disability Insurance Benefits.

"It may be observed in passing that there is no medical evidence at all which shows a significant impairment of the claimant's stomach, of any long duration, so there is no evidentiary basis whatever to show the claimant to have been disabled on that account, on or before March 31, 1969.

"With respect to the claimant's alleged back impairment, it appears that the chief problem in this regard was secondary to the injury to the applicant's right hip, which occurred in early childhood and this was an impairment which did not prevent him from engaging in any substantial gainful activity at any time, prior to 1964. Thereafter, the applicant underwent surgery, which from all accounts was rather beneficial. The clinical records of most recent date in this respect, namely those referring to treatments received in April 1968 and December 1969, show the claimant to have been 'in good orthopedic condition, presently'[1] and 'doing nicely' (Exhibit 26). In light of the foregoing medical findings at the clinic where the claimant was treated the Hearing Examiner can perceive no adequate basis in the evidence for regarding the claimant to have been disabled because of a back impairment, or any other physical impairment of an orthopedic nature, on or before March 31, 1969."

*   *   *   *   *   *

"The Hearing Examiner finds nothing in this aspect [educational, vocational and non medical evidence] of the evidence which would, in any appreciable measure, compensate for the deficiencies in the medical evidence discussed hereinabove. There is, for example, no basis in either aspect of the evidence which would warrant a conclusion that the claimant was not physically able to perform some appropriate form of work which would have been performed while in a seated position such as employment in the cigar making industry, a type of employment in which he had actual experience prior to the surgery on his right hip, with its reported beneficial effect, on or before March 31, 1969 when he was last insured for disability insurance benefits."

The examiner then proceeds to make but three "specific findings"[2] as follows:

*"FACT*

"1. The claimant in this case filed an application for disability insurance benefits on February 11, 1970.

"2. The claimant last met the earnings requirement for disability insurance benefit purposes on March 31, 1969.

"3. The medical evidence fails to show that the claimant was unable to engage in any substantial gainful ac-

---

1. However, any inference to be drawn from a clinical notation that plaintiff is "in good orthopedic condition", should be made in the light of what the record shows to be extensive injury to, and functional limitations on, his musculoskeletal system. The term "doing nicely" is a relative term that may indicate merely that plaintiff's condition was *as good as could be expected* under the circumstances. But, in any event, the extraction of these few conclusory comments without further elaboration is of questionable significance.

2. The Social Security Regulations provide that the Hearing Examiner's decision shall be in writing "and contain findings of fact and a statement of reasons". 20 C.F.R. § 404.939. A directive to make findings of fact normally means clear and explicit findings of all facts necessary to support the conclusions reached. Dowdy v. Procter & Gamble Mfg., 267 F.2d 827, 828 (5th Cir. 1959). There is no reason why this customary and accepted procedure should not be followed in Social Security cases. Indeed, the judiciary must hold administrative officers to high standards in the discharge of the fact-finding functions. United States v. Forness, 125 F.2d 928, 942 (2nd Cir. 1942). See also, 20 C.F.R. §§ 404.926 and 404.927.

tivity by reason of a back or stomach impairment, as alleged on his application, or any other type of impairment, on or before March 31, 1969."

■ While affirming the district court, we express concern over the brief treatment given by the examiner in evaluating the evidence. In his decision, the examiner submitted a four-page summary of the evidence preceding the "evaluation" hereinabove set forth but did not express any judgment as to what portions of the evidence he accepted or rejected.[3] Furthermore, he did not address himself to the testimony of plaintiff and his wife concerning plaintiff's pain, his alleged inability to dress himself or bathe, his limitations on sitting, standing, and walking, as well as other restrictions caused by his extensive hip and leg deformities. As fact finder he has the right to reject their testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. "In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; and all of these factors must be viewed against the applicant's age, edu-

cational background and work experience." Mode v. Celebrezze, 359 F.2d 135, 136 (4th Cir. 1966). Pain, in itself, may be a disabling condition, Marunich v. Richardson, 335 F.Supp. 870 (W.D.Pa.1971), and the present record includes medical data which would not contradict, indeed, would support plaintiff's complaints of pain.

■ Furthermore, in his "evaluation", the examiner gives no clue as to why he chose to accept certain medical evidence and reject contradictory evidence.[4] See Kennedy v. Richardson, 454 F.2d 376 (3rd Cir. 1972). In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence. It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings. Williams v. Celebrezze, 359 F.2d 950 (4th Cir. 1966).

3. The examiner merely extracted portions of the medical reports which he stated ". . . are of interest". Consequently, the summary serves no purpose except for identifying portions of the evidence; there is absolutely no attempt to analyze or evaluate those items referred to in the summary.

4. For example, there is no reference in the "evaluation" to
(a) X-ray studies in February, 1963, and August, 1964, indicating a "loss of the normal lordotic curve in the lumbar area" and a "loss of the right acetabulum and displacement of the right femoral head upward". In addition, there was considerable angulation at an old fracture site of the proximal right femoral shaft, osseous loose body in the hip joint and degenerative joint disease most marked in the distal thoracic spine;
(b) Report of Dr. Elliott Goodman dated December 4, 1965, reciting plaintiff's orthopedic problems and noting an inability to bend the right knee as well as marked atrophy of the right thigh;

(c) Report of confinement in Hahnemann Hospital, Philadelphia, from April 18, 1966, to July 29, 1966, during which confinement a hip fusion was effected which involved the taking of a three by one and one-half inch bone graft from the anterior and superior iliac spine and a subtrochanteric osteotomy. The wound became infected and plaintiff testified that only a thin skin cover grew over the wound site which causes a burning sensation when he walks;
(d) X-ray studies on April 14, 1969, revealing progressive degenerative changes in the lumbar spine in comparison with a previous study;
(e) Report of Dr. Stephan Christides dated April 30, 1970, indicating a functional loss of 50% in the thoracolumbar spine, a 100% functional loss of the right hip, a decrease in plaintiff's ability to stoop, bend and lift, although ambulation was considered fairly good by using the four-inch lift on the right shoe, and degenerative changes of the lumbar spine and pelvis.

"We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility." Choratch v. Finch, 438 F.2d 342, 343 (3d Cir. 1971). Recognizing the heavy work burden on hearing examiners acting under the Social Security Act, we emphasize that the above comments are designed to be helpful in the joint work of the administrative agency and the courts in this field.

■ While the findings in this case could be improved upon, nevertheless, after careful consideration of the record and relating it to the examiner's findings, we conclude that such findings are sufficient to satisfy the substantial evidence test. See United States v. Crescent Amusement Co., 323 U.S. 173, 185, 65 S.Ct. 437, 89 L.Ed. 650 (1944).

The judgment of the district court will be affirmed.