Eugene A. HARGENRADER, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education, and Welfare of the United States.

No. 77–1870.

United States Court of Appeals, Third Circuit.

Argued Feb. 22, 1978.

Decided April 4, 1978.

James E. Bukac, Legal Services for Northwestern Pennsylvania, Franklin, Pa., for appellant.

Blair A. Griffith, U. S. Atty., Stephen I. Goldring, Asst. U. S. Atty., Pittsburgh, Pa., Stephanie W. Naidoff, Regional Atty., Marianne P. Flood, Asst. Regional Atty., Dept. of Health, Education & Welfare, Philadelphia, Pa., for appellee.

Before ALDISERT, VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Plaintiff, Eugene A. Hargenrader, brought this action in the district court under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for review of the decision by the Secretary of Health, Education and Welfare, denying plaintiff's application for disability benefits pursuant to §§ 216(i) and 223(d) of the Act, 42 U.S.C. §§ 416(i), 423(d). Both parties filed motions for summary judgment. Finding that the decision of the Secretary was based on substantial evidence, the district court granted the defendant's motion for summary judgment.[1] Because the decision of the hearing examiner does not adequately state findings of fact to support its conclusions, as required by our decision in *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), we reverse.

Since at least 1969 the plaintiff has had erythema multiforme,[2] an acute skin disease which causes him to suffer from severe, periodic itching, swelling, peeling, and burning in the areas of the neck, throat, jawline, forearms, hands, groin, knees and toes. Outbreaks occur when the plaintiff comes into contact with certain substances or irritants, which include fiberglass, plastics, paints, stains, glue, plaster, lubricants, certain types of carpets, ceiling tile and certain medications. During the outbreaks, Hargenrader is physically incapacitated, often bedridden, and cannot work. According to the uncontroverted testimony of both Hargenrader and his wife, when Hargenrader was employed, attacks would occur 15 to 18 times per year, causing him to miss work more than half the time. After he ceased working on his physician's advice, attacks still occurred several times a year, causing him to be disabled for varying periods from one day to two weeks.

Hargenrader also suffers from a back problem which prevents him from lifting heavy objects, a hiatal hernia in the middle

---

1. The district court filed a Memorandum on April 21, 1977, in support of its judgment. See *Hargenrader v. Mathews, Secretary of HEW* (Civil No. 76–31, Erie, W.D.Pa.).

2. "Erythema multiforme . . . is a skin disease that presents a multitude of lesions varying from wheals and macules (a discoloured area on the surface of the skin; it is not raised above the level of the skin) to papules and nodules (small swellings). It is an acute inflammatory disease and involves principally the dorsa of the hands, the extensor surfaces (the surfaces of the limbs lying on the side of the limb joints toward which they are straightened) of the extremities, the nape of the neck, the ears, and the buccal (in the mouth) membranes. The bullous (bulla: a large blister) form of the disease may persist for months or years, and severe attacks may be fatal. The etiology of this disease is unknown. However, it does have some similarity to certain allergy diseases.

". . . However, there never has been any reliable or scientific evidence that erythema multiforme is an allergic disease. At the present time, it remains a disease of unknown origin."

3, Gray, Attorney's Textbook of Medicine, ¶ 65.44 (1977).

of the chest, an ulcer, and nervousness, attributable to his skin disease, which requires a regular dosage of strong tranquilizers. He has held a number of jobs as an unskilled laborer and has also been a self-employed carpenter, but he has been unemployed since his physician advised him not to work. In addition to his medical problems, his employment opportunities are limited by his educational background: he graduated last in his high school class and had an I.Q. of 91.

A vocational expert testified before the hearing examiner that if Hargenrader could be placed in a job where he would not come into contact with the substances which aggravate his condition, he would be able to hold a job. He named several such jobs and testified that those jobs existed in significant numbers in Western Pennsylvania.

To receive benefits under the Act, plaintiff must prove that he is under a "disability," that is, an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . ." 42 U.S.C. § 423(d)(1)(A). Thus, plaintiff must prove both physical or mental impairment and inability to engage in any substantial gainful activity. *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972).

As the district court found and the hearing examiner implied, the medical evidence clearly establishes that Hargenrader suffers from a physical impairment. However, the hearing examiner also made the following findings:

"2. The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which has lasted or could be expected to last for at least 12 months.

"3. The claimant is able to perform many types of jobs which exist in substantial numbers in the Western Pennsylvania area as testified to by the vocational expert witness.

"4. The claimant was not under a 'disability' as defined in the Social Security Act, as amended, at any time through the date of this decision."

Administrative Transcript, 10–11 (hereinafter cited A.T.). Findings 2 and 3 are ultimate findings of fact and finding 4 is a conclusion of law based on those ultimate findings of fact.

We are mindful that under 42 U.S.C. § 405(g) "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." However, to make even this limited review possible, the hearing examiner must make specific subordinate findings of fact to support his ultimate factual findings. In *S.E.C. v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1942), the Court stated:

"[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review. . . . [T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." [3]

3. Under the principles stated in *Chenery, supra,* our power to require the agency to make subordinate findings of fact is inherent in § 405(g). Such findings are necessary to make meaningful a plaintiff's right to the limited review under that section, which provides, *inter alia:*

"(g) Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further

time as the Secretary may allow. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, . . . The court . . . may, at any time, on good cause shown, order additional evidence to be taken before the Secretary, and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or

In *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3d Cir. 1974), we set forth the standard a hearing examiner's opinion must meet in this regard, as follows:

"In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. . . . It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings. *Williams v. Celebrezze,* 359 F.2d 950 (4th Cir. 1966). 'We think it is not too much to require that an administrative decision that a claimant is not eligible . . . be supported by explicit findings of all facts that are essential to the conclusion of ineligibility.' *Choratch v. Finch,* 438 F.2d 342, 343 (3d Cir. 1971)."

The hearing examiner's opinion in the present case falls short of the *Baerga* standard. *See Chenery, supra.* There are no specific subordinate findings to support findings 2 and 3 quoted above. Moreover, there is evidence directly inconsistent with finding 2 and implicitly inconsistent with finding 3, and in the absence of specific subordinate findings, we cannot tell if that evidence was not credited or simply ignored. As we stated in *Baerga* at 312:

"As fact finder he [the hearing examiner] has the right to reject . . . testimony entirely, but failure to indicate rejection could lead to a conclusion that he neglected to consider it at all. 'In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors; . . .' *Mode v. Celebrezze,* 359 F.2d 135, 136 (4th Cir. 1966)."

affirm his findings of fact or its decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based. Such additional or modified findings of fact and

There are several significant items of evidence which the hearing examiner did not address and should address in making specific findings. The hearing examiner's conclusions seem to be based on the assumption that all the irritants that cause Hargenrader's outbreaks are known and that he can predict which substances will cause outbreaks. There is evidence in direct conflict with this assumption. Mrs. Hargenrader testified that the plaintiff was afraid to do anything because he never knows what will cause an outbreak (A.T. 72). The plaintiff testified that a previously innocuous substance might suddenly cause an outbreak if he has been exposed to it for a long time (A.T. 55). Expert medical evidence provided only a partial list of irritants and indicated that the list was impressive, quite varied, and could only be established by trial and error (A.T. 150). There was also expert medical evidence that the cause of the disease was unknown.

Medical evidence that Hargenrader did not have an allergy, but rather a skin disease, is closely related to the evidence that not all the causes of the outbreaks are known. Apparently, the importance of the distinction between a disease and an allergy is that with a disease outbreaks may be caused by a greater variety of irritants than those classified as allergens. *Cf.* 1, Schmidt, Attorney's Dictionary of Medicine, A–112 (1977); 3, Gray, Attorney's Textbook of Medicine, ¶ 65.44. The only evidence that Hargenrader had an allergy was his non-expert use of that word to describe his condition. However, this is in direct conflict with expert medical evidence that an allergy had not been proven (A.T. 149). Yet the hearing examiner seems to have based his findings on the assumption that Hargenrader had an allergy (A.T. 10).

Finally, the hearing examiner made no mention of the testimony that the frequen-

decision shall be reviewable only to the extent provided for review of the original findings of fact and decision. The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions."

cy and duration of the plaintiff's attacks decreased only in a controlled environment, and even in such an environment he had to take strong tranquilizers regularly (A.T. 61–65).

We are aware that findings 2 and 3 are supported by the vocational expert's testimony that there were certain jobs the plaintiff could perform. However, this testimony was based on the assumptions that the plaintiff had an allergy and that the substances which caused the outbreaks could be predicted and avoided. As we have noted, there is evidence directly contrary to these assumptions.

If on remand the hearing examiner adheres to his original ultimate findings, his opinion should include subsidiary findings that support findings 2 and 3 and should address the evidence we have discussed.

The judgment of the district court will be reversed and the order of the district court modified to instruct the defendant to make findings of fact and conclusions of law consistent with this opinion, as well as to take additional testimony if the hearing examiner deems this necessary, in his discretion.

ALDISERT, Circuit Judge, dissenting.

There was *obiter dictum* in *Baerga v. Richardson,* 500 F.2d 309, 312–13 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975), articulating the panel's view as to what should be contained in the report to be filed by an examiner at the conclusion of a Social Security hearing. The panel said that "where appropriate, [the findings] should include a statement of subordinate factual foundations on which ultimate factual conclusions [sic] are based." The panel's suggestion did not acquire the dignity of a *ratio decidendi* because the panel's conclusion in *Baerga* was that the examiner's findings were "sufficient to satisfy the substantial evidence test." 500 F.2d at 313.

But the dictum in *Baerga* has now been elevated to a "standard" in this case by the majority, who believes that this suggestion now is a controlling legal precept of sufficient dignity as to command a reversal if not followed by a hearing examiner. Because I believe we have no authority to promulgate procedural rules for the executive branch requiring subordinate factual foundations (whatever this means) to support findings of fact, I dissent.

### I.

I note that the majority agrees that Congress has not mandated such a requirement. 42 U.S.C. § 405(g). Nor has attention been directed to any executive order that requires it. A case could be made, and I think it would be persuasive, that hearing examiners in an executive agency branch do not come under the supervisory power of the judicial branch. Under such a view, we may not promulgate mandatory procedural rules to govern the conduct of their hearings and reports. We may neither do this as a court of appeals nor as a judicial council. *See* 28 U.S.C. § 332(d).

If, on the other hand, the judiciary could be said to possess such rule-making authority, it seems to me that only the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States has the power to initiate the drafting of new procedural rules, and even these rules do not acquire coercive force until three discrete approvals of the proposed rules are then forthcoming: first, from the Judicial Conference; next, from the Supreme Court; and finally, from Congress. 28 U.S.C. §§ 331, 2072.

Moreover, I doubt that even the Judicial Conference has the power to request nationwide rules in this field, because Congress has already legislated on this subject and specifically delegated rule-making power: "The Secretary shall have full power and authority to make rules and regulations and to establish procedures . . . and shall adopt the reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits hereunder." 42 U.S.C. § 405(a). Thus, I have serious doubts about

the power of this court to promulgate procedural rules regulating the manner of finding facts in the Social Security Administration.

I perceive the role of courts of appeals to be extremely limited in the review of fact findings in Social Security cases. By statute, the first judicial review of a final decision of the Secretary is relegated to the district court. If that court determines that the findings of the Secretary as to any fact are "supported by substantial evidence", the district court has no leeway to disturb them, because Congress has demanded that those findings "shall be conclusive". 42 U.S.C. § 405(g). The role of the court of appeals, I perceive to be even more restricted: we determine only if the district court erred in applying appropriate law in its review of the case, including the law pertaining to the review of fact-finding. If it has, we affirm; if it has not, we reverse. We are authorized only to adjudicate a specific case or controversy; as a *court*, we are not entrusted with rule-making authority.

## II.

Like my brothers of the majority, I am extremely sympathetic to the plight of this appellant. Had I been the hearing examiner, I probably would have made findings of fact leading to a conclusion of permanent disability because there does exist evidence to support such a result. But I am not the examiner, nor am I a superior staff member in the hierarchy of HEW. And neither are my distinguished brothers on this court.

It is often an agonizing temptation for judges who are moved by sympathy from the evidence in deserving cases to involve themselves in fact-finding. But reviewing judges cannot convert *evidence* presented to a factfinder into *facts*. In a jury trial that is solely the province of a jury; in a Social Security case, that of the Secretary of Health, Education and Welfare or his designate. 42 U.S.C. § 405(a) and (b). What we cannot do directly, we should not be able to do indirectly. It is obvious that the majority (and I) disagree with the product of the examiner's fact-finding process in this case. But that officer, like any factfinder, is given the discretion to evaluate evidence. We should respect his independent exercise of this function, and not interfere with it in the guise of formulating procedural rules which in reality are tailored to produce a particular fact-finding result which we desire. As judges in a reviewing hierarchy, we have important responsibilities to ensure that the appropriate law is applied. We do not have the authority, and it is contrary to the American appellate tradition, to become enmeshed in the fact-finding process. Thus, in my view it is improper to command or instruct a hearing examiner: "If on remand the hearing examiner adheres to his original ultimate findings, his opinion should include subsidiary findings . . . and should address the evidence we have discussed." And although the implied threat of reversal is very real, I suggest that it is only sound and fury with no truly coercive effect. All that this court can do, even if constrained to respect the *Baerga dictum, supra,* is to remand to the Secretary if his procedures do not meet the majority's requirement of a statement of "subordinate factual foundations" to support findings of fact. I believe the majority opinion could be taken to allow this appellate court to give a credibility rating on discrete pieces of "evidence we have discussed". We cannot assume this role with respect to fact-finding by our district courts; *a fortiori* we cannot assume it with respect to the executive branch. We have no power under the law to reverse the fact-finding so long as there is substantial evidence on the record to support it.

Accordingly, I would affirm the district court's acceptance of the well reasoned analysis prepared by the magistrate in these proceedings.