Natalie F. SMITH, Widow of Dennis A. Smith, Deceased, Appellant,

v.

Patricia HARRIS, Secretary of Health, Education and Welfare, Appellee.

No. 80–1923.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit Rule 12(6) Dec. 2, 1980.

Decided March 23, 1981.

---

Joel N. Kreizman, Evans, Koelzer, Marriott, Osborne & Kreizman, Red Bank, N. J., for appellant.

Maryanne T. Desmond and Lorraine S. Gerson, Asst. U. S. Attys., Robert J. Tufo, U. S. Atty., Newark, N. J., for appellee.

Before ALDISERT, HUNTER and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Dennis A. Smith claims he was entitled to disability insurance benefits under 42 U.S.C. § 223(d) for a disability period under 42 U.S.C. § 216(i) of the Social Security Act (the Act).[1] Smith's claim for disability was

---

1. The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the Act states as follows:

[A] individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

denied by the Administrative Law Judge (ALJ) in an opinion after a hearing at which Smith waived his right to counsel. The district court ruled that the ALJ's decision was supported by substantial evidence. On this appeal, the issue is whether under the facts of this case it was reversible error for the district court to have failed to remand this claim to the Secretary of Health, Education and Welfare (the Secretary) when it found that the ALJ inadequately considered claimant's pain. We conclude that the district judge was in error and will vacate the judgment with direction to the district court to remand this case to the ALJ for further consideration.

## I.

Dennis A. Smith was a 53 year old male who alleged he was disabled as of November 11, 1977 due to "otological impairments, bundle block of the heart, cataracts in eye, [and] blindness in one eye." Claimant met the insured status requirements of the Act. The record shows that claimant completed the eighth grade and received training as a boiler operator in trade school. He was employed for fifteen years as head custodian in a school. In this capacity, he performed numerous maintenance tasks.

In various interviews for his disability benefits, claimant stated that in 1975, subsequent to a tonsillectomy, he developed a hearing problem. He asserted that he experienced a "hissing and pulsating tinnitus in his left ear."[2] Furthermore, he alleged that he ceased to work in February of 1976 because the noise was "too annoying to work under." Smith complained of "almost constant deafening noise" and he claimed that "all sounds [were] greatly magnified— the hum of a refrigerator motor [was] a roar."

In January of 1977, claimant was examined by Dr. Robert Peterson. At that time, Smith suffered from hazy vision and had trouble reading. Dr. Peterson stated that claimant had "light reception" in his left eye only and that, due to an incipent cataract, vision in his right eye was deteriorating. However, though Dr. Peterson expected Smith's vision to deteriorate and recommended surgery, he nonetheless believed that vision in Smith's right eye was correctable to 20 over 30. On November 27, 1977, and November 19, 1978, Dr. Richard H. Demaree, a general practitioner, examined Smith and diagnosed severe tinnitus (ringing, buzzing, roaring sounds) in the left ear and a bundle block in the heart.

In his last interview, in his Report of Continuing Disability, Smith commented that "I anticipate my vision problem will be corrected by surgery on August 17th, but my main problem (the ringing and hissing in his ears) has not improved at all." In addition, he indicated that his main complaint was "not loss of equilibrium but almost constant deafening noise (hissing, ringing and magnified sounds.)" Finally, claimant alleged this constant deafening noise made "me unable to concentrate on anything else."

On January 26, 1978, Dr. Jay Kern, a gastroenterologist, examined Smith and he found impaired vision and an inability to tolerate high noise levels.

On June 15, 1978, Dr. Julio T. Noquera, an otolaryngologist, examined the claimant. On the basis of diagnostic tests he concluded that Smith had a loss of hearing in both ears and diagnosed the ringing sound in Smith's ears as a hearing loss related to an inability to hear high frequencies. He noted, however, that Smith's capacity to hear speech was normal.

Mr. Bernard Orr, a vocational expert, stated in the record that "if Smith's complaints were true, there were absolutely no jobs he could perform." However, he stated that if Smith retained the residual functional capacity to perform sedentary and

---

which exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
Id. § 423(d)(2)(A).

2. Gray's Attorney's Textbook of Medicine, Par. 84.62 (3rd Ed. 1978) describes severe vertigo tinnitus as "a subjective sensation of ringing or buzzing in the affected ear."

light work, he had the residual vocational capacity to perform jobs including bench assembler, ticket taker, cashier, and front ·desk clerk, since all of these jobs are performed in relatively quiet areas.

## II.

On November 11, 1977, claimant applied for disability insurance benefits. The application was denied both initially and upon reconsideration. Smith requested a hearing before an ALJ and a hearing was scheduled for November 7, 1978. No one appeared for or represented Mr. Smith at the administrative hearing. The circumstances under which he did not appear are unclear. It is established that Mr. Smith did request a hearing, but on November 2, 1978 he requested a postponement on a form provided by the Social Security Administration stating he was "under doctor's care—urinary problems plus not released from eye surgeon from surgery on Aug. 17, 1978." There is a letter in the file from Mr. Smith to the hearing examiner stating that following a telephone conversation with "Edna Wood from your office I wish to advise you that I waive my right to attend a hearing." There is no indication in the record as to what was said in the conversation with Edna Wood, but it is clear that Mr. Smith was persuaded to alter his prior postponement request. Whether or not an attorney would have permitted such waiver or would have allowed Mr. Smith to be persuaded to withdraw his postponement request is conjectural.

The ALJ considered the case *de novo* without any oral testimony, and on January 15, 1979, found that Smith retained the residual functional capacity to perform light and sedentary jobs existing in substantial numbers in the local and national economy, and ruled that he was not disabled within the meaning of the Act. On March 5, 1979, Smith died, seven weeks after the ALJ's decision. The ALJ's ruling became the Secretary's final decision on June 18, 1979. Thereafter, pursuant to § 205(g) of the Act, Natalie F. Smith, widow of Dennis G. Smith, appealed to the district court for review of the Secretary's final determination, seeking the disability benefits allegedly due her deceased husband under § 204(d) of the Act, 42 U.S.C. § 404(d). The district court found that the Secretary's ruling was supported by substantial evidence even though the ALJ had inadequately considered the claimant's pain, and as a consequence, affirmed the Secretary's decision.

## III.

In a thoughtful opinion, the learned district judge noted all of the proper precepts as to the standard of review of the Secretary's finding. . Since so much has been written noting the restraints on and the standards for both district judges and courts of appeals in reviewing the Secretary's findings, these precepts need not be repeated here. *See generally Cotter v. Harris*, 642 F.2d 700, No. 80–2027 (3d Cir. February 20, 1981); *Smith v. Califano*, 637 F.2d 968 (3d Cir. January 13, 1981); *Livingston v. Califano*, 614 F.2d 342 (1980); *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979); *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978).

 The district court recognized that pain by itself can be a disabling condition. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). Further, it found that the ALJ "inadequately addressed Smith's subjective complaints of pain." Indeed, the court stated that "[o]rdinarily, this would necessitate a remand but such an order would be futile in this case because the death of Smith has made further fact finding impossible." *Id.* at App. 8. The district judge's statement that it would be futile to remand because of Smith's death is predicated on the assumption that it is impossible to present subjective evidence of pain when the original claimant is deceased. While, of course, ALJ's do not have the power to resurrect the dead, nevertheless they can receive evidence from third parties and particularly doctors, family members and health personnel when the complaints of a deceased

claimant and acts of the claimant corroborate the inference of subjective pain. In fact, in *Baerga*, this court observed as follows:

> In addition to objective medical facts and expert medical opinions, the Hearing Examiner must consider the claimant's *subjective evidence of pain and disability, as corroborated by family and neighbors*; and all of these factors must be viewed against the applicant's age, educational background and work experience."

500 F.2d at 312 (Emphasis added) (*quoting Mode v. Celebrezzi*, 359 F.2d 135, 136 (4th Cir. 1966)). When the plaintiff in personal injury cases is deceased, the trial court routinely receives evidence from family, doctors and neighbors as a basis for damage awards for the pain and suffering which a party endured prior to death. We see no reason why the widow of a claimant would have any less rights before an ALJ or have a less sympathetic fact finder than one encounters routinely in a trial court in personal injury cases.

■ As Judge Adams recently noted in *Dobrowolsky v. Califano*, 606 F.2d at 406–7:

> This court has ... emphasized [on numerous occasions] that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence. We have pointed out that "[a] hearing on an application for benefits is not an adversary proceeding. The applicant is confronted with no adversary in the usual sense of that term. The Social Security Administration provides an applicant with assistance to prove his claim."

(footnotes omitted). Accordingly, "[i]t is incumbent upon the examiner to make specific findings—the court may not speculate as to findings." *Id.* at 409. Similarly, a district judge may not speculate as to the findings which an ALJ would make when appropriate and relevant evidence is presented.

In fact, should the ALJ fail to make comprehensive findings, his holding must be reversed and remanded for further findings. *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978). In *Baerga v. Richardson*, 500 F.2d at 312–13, this court observed as follows:

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision .... It is incumbent upon the examiner to make specific findings— the court may not speculate as to his findings. *Williams v. Celebrezze*, 359 F.2d 950 (4th Cir. 1966). "We think it is not too much to require that an administrative decision that a claimant is not eligible ... be supported by explicit findings of all facts that are essential to the conclusion of ineligibility." *Choratch v. Finch*, 438 F.2d 342, 343 (3rd Cir. 1971).

■ The ALJ's duty, therefore, is critical in this context since

> consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed. We declared in *Hess* that "[a]lthough the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court record where the adversary system prevails."

*Dobrowolsky v. Califano*, 606 F.2d at 407 (citing *Hess v. Secretary*, 497 F.2d at 840). Particularly where the claimant is unrepresented by counsel, the ALJ has a duty to exercise "a heightened level of care" and "assume a more active role." *Id.*

In this case, the record clearly reveals Smith's subjective statements of pain. Moreover, the record indicates that Smith's doctor diagnosed his problem as "severe vertigo tinnitus."[3] The district court found

---

**3.** A National Institute of Health survey, reported in *Health Sciences Center News*, Vol. 5, No. 8, Aug. (1976), stated that for 7.2 million sufferers "tinnitus is so severe as to be debilitating."

that "the ALJ inadequately addressed Mr. Smith's subjective complaints of pain." The ALJ should seek to corroborate this evidence by considering the testimony of others such as Smith's family members, neighbors and personal physicians.

### IV.

For the reasons stated above, therefore, we will vacate the district court's order of summary judgment and direct that the matter be remanded to the Secretary for a further hearing.

ALDISERT, Circuit Judge, concurring.

I join in parts I, II, and IV of the majority opinion. I do not join in that portion of part III that relies on *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978). As more particularly set forth in my dissent, *id.* at 438–39, I have problems with that case. My concerns would have been alleviated had this court required only that the ALJ set forth his narrative or historical *findings* of fact (basic facts). Basic facts underlie determinations of ultimate facts, which are mixtures of fact and law.[1] Although judicial review of basic facts is limited to the substantial evidence standard, a review of ultimate facts entails an examination for legal error of the legal components of those findings.

I believe that both the Secretary of Health and Human Services and the district courts would have better understood our directions in *Hargenrader and Baerga v. Richardson*, 500 F.2d 309, 312–13 (3d Cir. 1974), if the court had distinguished basic facts, for which detailed findings are necessary, from ultimate facts, for which a less detailed explication is sufficient.

1. Basic facts are those narrative or historical facts elicited at trial from the testimony and evidence presented by witnesses. An ultimate fact is usually expressed in the language of a standard enunciated by case-law rule or by statute, *e. g.*, an actor's conduct was negligent; the injury occurred in the course of employment; the rate is reasonable; the company has refused to bargain collectively. "The ultimate finding is a conclusion of law or at least a determination of a

mixed question of law and fact". It is the province of the fact finder—the jury, the judge in non-jury cases, or the administrative agency—to "find" the basic fact, or that part of an ultimate finding that rests on narrative or historical facts.... [O]nce basic facts have been found, they are seldom dislodged. R. Aldisert, The Judicial Process 694 (1976) (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 57 S.Ct. 481, 573, 81 L.Ed. 755 (1937)).