

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-9-2005

# Acosta v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4203

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Acosta v. Comm Social Security" (2005). *2005 Decisions.* Paper 719.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/719

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-4203

———

ELIZABETH ACOSTA,
Appellant

v.

JO ANNE BARNHART, COMMISSIONER OF
THE SOCIAL SECURITY ADMINISTRATION

———

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 02-cv-01492)
District Judge: Honorable Kent Jordan

———

Submitted Under Third Circuit LAR 34.1(a)
July 11, 2005

Before: SLOVITER, McKEE, Circuit Judges, and FULLAM, District Judge*

(Filed August 9, 2005)

———

OPINION

———

_____

\* Hon. John P. Fullam, Senior Judge, United States District Court for the Eastern
District of Pennsylvania, sitting by designation.

SLOVITER, Circuit Judge.

Elizabeth Acosta appeals from the District Court's entry of summary judgment in favor of the Commissioner of Social Security ("Commissioner"). The District Court had jurisdiction pursuant to 42 U.S.C. § 405(g), and we have appellate jurisdiction under 28 U.S.C. § 1291. For the reasons that follow, we conclude that the Commissioner's determination that Acosta was not disabled within the meaning of the Social Security Act is supported by substantial evidence, and thus affirm.

Because we write primarily for the benefit of the parties, we will only recite the pertinent facts. In 1993, Acosta was involved in a car accident and, as a result, began experiencing back pain. In June 1995, she had surgery to correct a small to moderate size disc herniation. Thereafter, she returned to work full time. Four years later, Acosta again began to experience pain. In October 1999, she was treated for a central disc herniation. Her doctor, Michael Sugarman, performed surgery to remove an extruded disc fragment and install a cervical stabilization plate. In March 2000, Acosta returned to work, but she continued to experience pain. As a result, in November 2000, Dr Sugarman performed further surgery. On March 26, 2001, after monitoring her progressive improvement in the months following the surgery, Dr. Sugarman found Acosta was no longer disabled and declared that she could resume full-time work.

Acosta first filed an application for disability insurance benefits in May 2000 when she was forty years old. In response to this application, the administrative law judge

("ALJ") granted Acosta disability benefits for the closed period between September 29, 1999 and March 26, 2001. The present appeal concerns Acosta's second application for disability benefits and specifically, whether Acosta was disabled after March 26, 2001.

On July 19, 2001, three months after Acosta returned to work, she met with Dr. Sugarman and informed him that her back pain had again worsened. During this visit, Dr. Sugarman administered strength tests. These tests demonstrated that Acosta's strength in her lower extremities was normal and although Dr. Sugarman's notes describe her pain as "debilitating," he nevertheless concluded that she was able to work. On September 4, 2001, Acosta visited Dr. Jill Mackey, her family doctor, seeking treatment for pain in her neck and back. According to Dr. Mackey, Acosta complained of pain that lasted all day and made it difficult for her to engage in her daily activities. On September 10, 2001, after these visits, Acosta requested a medical note indicating that she could only work part-time. On September 14, 2001, Acosta stopped working.

She made another visit to Dr. Sugarman on September 20, 2001, complaining of neck pain. Dr. Sugarman found that her neck had a limited range of motion, but could not find a reason for her pain. On October 10, 2001, Acosta underwent an MRI (magnetic resonance image) of her spine, but the MRI showed no evidence of any lesions in her neck or disc abnormality. An MRA (magnetic resonance angiogram) was also performed that same day and the MRA similarly showed no significant abnormality in her neck.

A few weeks later, on November 1, 2001, Acosta underwent a Residual Functional

Capacity Assessment. The physician who performed the assessment concluded that Acosta was able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk two hours in an eight-hour workday and sit for six hours in an eight-hour workday. On November 29, 2001, Acosta underwent cervical and lumbar myelograms and computed tomography scans of her cervical and lumbar spine. All of these tests came back negative. On December 6, 2001, Acosta was re-examined by Dr. Sugarman who noted no evidence of any neural compression throughout her cervical or lumbar regions. Unable to find a physical cause of her pain, Dr. Sugarman recommended that Acosta attempt physical therapy as treatment for her symptoms. However, despite being unable to find any physical reason for her pain, Dr. Sugarman described Acosta as "totally disabled" when filling out her private disability insurance form. App at 5.

Acosta began physical therapy on December 11, 2001. She discontinued her therapy on February 5, 2002 because she told her therapist that she felt she was not making progress. On January 18, 2002, Acosta completed a second Residual Functional Capacity Assessment. Acosta's results were similar to the first test. She was found to be able to occasionally lift 20 pounds, frequently lift 10 pounds, and to stand or walk two hours in an eight-hour work day.

Acosta's current application for Social Security disability benefits was filed on October 1, 2001. In her application, she claims that she is disabled and that she is entitled to disability benefits due to her inability to work as of September 14, 2001. Shortly

thereafter, Acosta also filed a claim for supplemental income. The Social Security Administration denied both claims initially and upon reconsideration. Acosta then requested a hearing before an ALJ. However, although she was fully apprised of her right to an oral hearing and the right to be represented by counsel, she elected to have her case decided on the written evidence in the record without an oral hearing.

The ALJ denied both claims, concluding that based on the results of her Residual Functional Capacity Assessment, Acosta was able to perform her previous work as a hospital billing clerk and was therefore not disabled under the Social Security Act ("the Act"), 42 U.S.C. §§401-434, 1381-1383. The Social Security Administration's Appeals Council declined review and the decision of the ALJ thus became the final administrative decision. Acosta then filed an action in the District Court, but that Court agreed with the ALJ's determination and granted summary judgment to the Commissioner. The District Court found that substantial evidence supported the ALJ's determination that Acosta could perform her previous work.

We review the District Court's decision to grant summary judgment de novo, but review the Commissioner's final denial of social security disability benefits using a substantial evidence standard. Richardson v. Perales, 402 U.S. 389, 390 (1971). In Morales v. Apfel, we defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). However,

we have the "'responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence.'" Morales, 225 F. 3d at 317 (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In disability determinations, evidence offered by a treating physician must be accorded great weight, but an ALJ is allowed to reject a treating physician's conclusions so long as the rejection is based on other medical evidence, not on personal inferences or speculation. Id. at 317-18.

To be eligible for social security disability benefits, a claimant must demonstrate that s/he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). A claimant's disability determination must be reached by using the "five-step sequential evaluation process" delineated in 20 C.F.R. § 404.1520.

The five step inquiry examines whether the claimant is currently engaged in substantial, gainful activity; if not, whether the impairment is contained or equivalent to one in the list of impairments set out in 20 C.F.R. § 404, subpt. P, app. 1. If the claimant's disability is on the list or is equivalent to a disability on the list, s/he will be found disabled. 20 C.F.R. § 404.1520. If the claimant's disability does not meet or equal one on the list, the Commissioner must consider whether the claimant could return to her

past relevant work. If s/he cannot, the Commissioner must assess whether based on the claimant's age, education, and work experience, and residual functional capacity,[1] s/he can engage in other work available in the national economy. Id. It is the claimant's burden to show that she cannot return to her past work experience as a result of her physical and/or mental impairment. Morales, 225 F. 3d at 316.

As noted, if there is substantial evidence in the record to support the Commissioner's findings, we are bound by such determination. We conclude that there is substantial evidence to support the findings of the ALJ, that Acosta, despite her repeated back and neck problems, retained sufficient residual functional capacity to perform her previous employment and consequently, was not disabled under the statute.

The ALJ fully explained the reasoning behind his decision. He noted the information he relied upon and the information he rejected as well as the reasons for rejecting such evidence. The ALJ considered the evidence documenting Acosta's history of severe back problems, but reasonably found that despite these problems, substantial evidence demonstrated that Acosta retained the residual functional capacity to perform the requirements of her past relevant work. Specifically, the ALJ relied upon the fact that the October 2001 MRI and MRA showed no disc abnormality, the November 1, 2001

---

[1] Pursuant to 20 C.F.R. § 404.1545(a), "residual functional capacity" is defined as any work one may continue to perform in spite of physical or mental impairments and related symptoms.

Residual Functional Capacity Assessment indicated that Acosta could perform sedentary work, the November 29, 2001 CT scans were negative, the November 29, 2001 cervical and lumbar myelograms were negative, the December 2001 physical therapy notes indicated no cervical spine tenderness as well as the ability to sit unsupported, and the office notes of Dr. Mackey indicated no mass lesions or disc abnormalities. Based upon the medical evidence outlined above, the ALJ found that Acosta's complaints were "not fully credible, as they [we]re exaggerated and inconsistent with the objective medical evidence." App at 17.

Despite this significant medical evidence, Acosta argues that the ALJ drew incorrect conclusions from some of the evidence and ignored other pieces of evidence.

The fact that a different conclusion could have been drawn from Acosta's request for a doctor's note does not mean the ALJ's interpretation regarding that evidence was not supported by the record or, more importantly, that the ALJ's overall decision was not supported by substantial evidence. Similarly, the omission of evidence regarding the February 2001 diagnosis of a herniated lumbar disc is not problematic. This diagnosis occurred before the relevant time period and was never observed thereafter.

The District Court noted that the ALJ clearly considered the evidence supporting Acosta's position, but rejected it due to conflicting medical evidence and a lack of credibility. Although we might have reached a different conclusion if we were reviewing the evidence de novo, such speculation is unnecessary. Substantial evidence supports the

8

ALJ's conclusion that Acosta is not disabled because she retained the residual functional capacity to perform her previous work as a billing clerk.

On appeal, Acosta also contends that the ALJ erred in evaluating the demands of her past relevant work according to the Dictionary of Occupational Titles ("DOT"), because the DOT does not include an entry for her type of employment. Although it is true that the ALJ should have made clear the job position in the DOT on which he relied, it is incorrect to state that a hospital billing clerk position is not included in the DOT. Section 214.362-022 of the DOT describes the position of a hospital insurance clerk and therefore the use of the DOT definition was appropriate.[2] The DOT describes hospital billing work as sedentary and because the evidence demonstrated that Acosta could perform sedentary work, the ALJ's conclusion that Acosta could work in her former

_____

[2] The DOT states that a person who performs this job:

> Verifies hospitalization insurance coverage, computes patients' benefits, and compiles itemized hospital bills: Type insurance assignment form with data, such as names of insurance company and policy holder, policy number, and physician's diagnosis. Telephones, writes or wires insurance company to verify patient's coverage and to obtain information concerning extent of benefits. Computes total hospital bill showing amounts to be paid by insurance company and by patient, using adding and calculating machines. Answers patient's questions regarding statements and insurance coverage. Telephones or writes companies with unpaid insurance claims to obtain settlement of claim. Prepares forms outlining hospital expenses for governmental, welfare, and other agencies paying bill of specified patient.

9

position was supported by substantial evidence.

It follows that the District Court did not err in granting summary judgment for the Commissioner.

FULLAM, District Judge, dissenting

I believe that the Administrative Law Judge failed to conduct the proper inquiry into the circumstances of this unrepresented person's claim and would remand the case for a full exploration of Ms. Acosta's condition. There is no dispute that Ms. Acosta suffers from significant back problems, and she was awarded benefits for the period from September 29, 1999 until March 26, 2001, when her treating physician cleared her to return to work. Ms. Acosta filed the application under review after attempting to work for several months, but she did not have an attorney at the administrative level and waived a hearing.

After reviewing the record, I am convinced that the ALJ did not assume the more active role required when the claimant is unrepresented and did not meet the heightened duty of care and responsibility that attends in such instances. See Livingston v. Califano, 614 F.2d 342, 345 (3d Cir. 1980). The ALJ acknowledged that the "medical evidence reveals that the claimant has severe discogenic and degenerative disorders of the spine, with back sprains and strains. She is status post fusion with instrumentation from C4 to C6 with pain and physical restriction." A.16. Although the medical records detail consistent complaints of pain from Ms. Acosta and her treating physician assessed her

10

condition as totally disabled, the ALJ, without speaking to or observing Ms. Acosta, discredited her subjective complaints of pain as unsupported by the record, because medical scans did not reveal the source of her pain. Instead of fulfilling his obligation to seek to corroborate the evidence of pain, Smith v. Harris, 644 F.2d 985, 990 (3d Cir. 1981), the ALJ highlighted evidence that he found contradicted her subjective complaints. The ALJ "had a duty to consider seriously [the claimant's] subjective complaints of pain and to probe further." Reefer v. Barnhart, 326 F.3d 376, 381 (3d Cir. 2003). I believe the ALJ did not do so, and I respectfully dissent.