**William T. MYERS, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. 82–475.

United States District Court,
W.D. Pennsylvania.

Feb. 6, 1985.

John W. McTiernan, McArdle, Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for plaintiff.

Anthony M. Mariani, Asst. U.S. Atty., Pittsburgh, Pa., Regional Atty., Office of Gen. Counsel, Region III, Dept. of Health and Human Services, Philadelphia, Pa., for defendant.

ROSENBERG, Senior District Judge.

This memorandum supplements the Report and Recommendation of the magis-

---

trate to whom this case had been previously assigned. This is an appeal from the action of the defendant, Secretary of Health and Human Services in denying the plaintiff, William T. Myers, compensation for injuries he received at work on May 26, 1974.

The decision of the Secretary in denying the plaintiff any compensation under the Social Security Act is the second denial after the matter had been remanded to the Secretary previously for reconsideration. The reason set forth originally by the magistrate is that the Administrative Law Judge failed to comply with the requirements set particularly by the Court of Appeals for this Circuit as basic principles for the determination of such cases.

Briefly, these reasons were: (1) an administrative law judge rejected the findings of the medical experts as being "clearly contrary to the weight of the evidence, which indicates that the claimant can engage in at least sedentary work activity"; (2) the law judge failed to identify the evidence upon which he was relying when he made his decision and consider the weight and to what degree it was supported by objective medical evidence, as stated in *Bittel v. Richardson,* 441 F.2d 1193, C.A. 3, 1971, "a judge is required to consider a claimant's symptomatology even if it is not accompanied by objective medical data"; (3) the law judge failed to indicate and consider the sincerity of the complaints of pain which presumably disabled the plaintiff; and (4) the law judge failed to make specific findings as to the claimant's subjective complaints of pain, *Smith v. Harris,* 644 F.2d 985, C.A. 3, 1981; and in *Smith v. Califano,* 637 F.2d 968, 972, C.A. 3, 1981, "[A] claimant's assertions of pain must be given serious consideration ... even where ... not confirmed by objective evidence".

After remand, the administrative law judge made another determination which was affirmed by the Appeals' Council and the Secretary. On May 18, 1983, the law judge decided against the plaintiff and commented that he had observed the plaintiff throughout the hearing and that he perceived no signs of pain by the plaintiff. He concluded that from the preponderance of the evidence, the claimant *failed to show* that he "has experienced such as chest pain when exposed to excessive stress or back pain, and has not been of such severity so as to contra-indicate his ability to engage in substantial gainful activity and that said pain has not, in and of itself, been disabling within the meaning of the law and regulations".

He further stated that the preponderance of the credible evidence of record indicates that the plaintiff's heart and back conditions "have not been of such severity so as to preclude claimant's ability to engage in sedentary work or heavy lifting, prolonged walking or standing and exposure to industrial hazards would not be required".

The administrative law judge spoke of preponderance of the evidence, but it will be seen that all subjective evidence by the plaintiff and objective evidence by the many medical experts were, in fact, "ex parte" by the plaintiff; nothing by the defendant.

The evidence submitted before the administrative law judge the first time was that the plaintiff was 43 years of age and married; that he worked as a truck driver and a forklift operator for about two years; that his job required him to lift up to 100 to 150 pounds; that he had to load and unload the truck; that he was injured in an accident at work on May 24, 1976; that he sustained a back injury; that he has not worked since that time due to his back injury and cervical sprain and arteriosclerotic heart disease which caused his chest pains; that he could drive his car for only short distances; that he could walk two to three blocks; that he could no longer engage in his former hobbies; that he had trouble sleeping at nights, although he did take sleeping pills and various medications which caused him to become drowsy and sleepy and at time blurred his vision; that he could sit for longer periods of time when he wore his back brace but the brace irritated his skin; that he felt he could lift 15

to 25 pounds; that he used glasses for reading; that he had been in the McKeesport Hospital from May 7, to May 13, 1978, after experiencing dizziness and chest pain for three months; that his myocardial scan was negative; that although it was felt he had coronary artery disease, his electrocardiogram did not show the appropriate changes and that the plaintiff could have had variant angina due to arterial spasms.

In 1978, Dr. Philip B. Holland, a specialist in orthopedic surgery, testified that an examination showed some episodes of pain in his upper back and coccyx; tightness and tenderness with splinting of lumbar spine with muscle tenderness of trapezius and neck muscles; that physical therapy had afforded the plaintiff frequent relief but that the plaintiff had daily pain in his lower back which radiated to his knees and that he had tension-type headaches. It was also Dr. Holland's opinion that the plaintiff was unable to work because of his lower back strain and that he appeared to be permanently disabled.

Dr. Stephen A. Zubritsky, a specialist in internal medicine, reported that the plaintiff's coronary arteriographic data revealed arteriosclerotic abnormalities, and that the plaintiff's treatment should be restricted to medical therapy since he did not have any obstructive disease in the main coronary vessels that were of surgical degree.

In 1979, Dr. Holland again reported that the plaintiff continued to complain of pain in his lower back and it was his opinion that the plaintiff was "totally disabled from work".

The plaintiff was again hospitalized at McKeesport Hospital from June 24 to June 30, 1979 because of increasing severity of his back pain and the diagnosis upon his discharge was lumbar radiculitis.

Dr. John P. Hodgson, a specialist in internal medicine, on June 25, 1979, examined the plaintiff and reported his diagnosis was that of anginal syndrome, and that coronary spasm was suspected but not proven.

Dr. Shaukat Hayat, a specialist in general and neurological surgery, on August 3, 1979, reported that he had originally seen the plaintiff in June, 1979 when the plaintiff complained of back pain radiating down both legs which made it unbearable with walking and driving, and that his history suggested lumbar compression syndrome and indicated a slight bulging disc.

The plaintiff was again hospitalized at McKeesport Hospital from June 9 to 19, 1980, when the plaintiff complained of anorexia without nausea and vomiting. His electrocardiogram showed peak "Y" wave changes, borderline ST segment changes in the inferior leads and in sinus bradycardi. X-rays of the skull showed widening of the posterior fossa, and the final diagnosis was arteriosclerotic heart disease, empty-sella syndrome _____ (illegible).

On October 20, 1980, Dr. Holland again reported that the plaintiff continued to have pain in his lower back with radiation down his legs and episodes of numbness of both legs, especially his left leg, along with pain in his neck and upper extremeties; that he had been attending physical therapy three times a week and continued to report moderate relief of his symptoms. Dr. Holland also stated that he did not feel the plaintiff had made any real improvement since his last report.

On November 18, 1980, Dr. Rahat Chaudhry, a specialist in internal medicine, reported that his diagnosis was arteriocclerotic heart disease and suffering from ASHD and gastritis.

In December, 1980, Dr. Rudolph J. Buck, a specialist in internal medicine, reported that a treadmill test indicated subnormal exercise capacity and a negative though incomplete exercise test.

Dr. Holland again on March 27, 1981, reported that the plaintiff had continuous neck and lower back strain with intermittent moderate improvement with regression or radiation of pain into the arms and legs at times. This diagnosis was similar to those previously given as being caused by his May accident. The doctor said the plaintiff was unable to walk for more than a few minutes or stand for more than a

half hour; that he was limited to very sedentary activities; that he had paravertebral muscle spasm and radicular syndrome; that at times he had sensory loss and limitations in his range of motion.

Following the remand, the Secretary then referred this action to an administrative law judge for another hearing on December 21, 1982, and during that hearing the plaintiff, himself, testified. He stated that he had pain in both legs and in his lower back, which went into his neck and head; that the pain went down his left shoulder and left arm; that the condition had worsened since surgery; that his legs collapse at the knee and he falls down; that the left leg gives way more than the right leg; that he had fallen down the stairs at least three times, and that he also falls when he is walking on the level; that chest pain occurs only when he is under stress and medication gives him only slight relief from his pain; that he gets physical therapy three times a week, which is moist heat and massage; that this therapy gives him relief from pain for a few hours and then the pain returns; that he cannot stand longer than one-half hour; that he cannot pick up objects from the floor; that he could lift five pounds from the table and that he could lift a total weight of ten pounds; that he can sit up for thirty or sixty minutes, depending upon the position; that he can care for his own personal needs and drive his car for about ten minutes; that he goes shopping with his wife, but his wife picks up the objects; that at the time of this hearing he weighed 122 and ½ pounds; when he had weighed 157 pounds at the time of his injury; and that he has no appetite and eats just one meal a day.[1]

After the hearing the administrative law judge filed his decision in which he found the plaintiff was unable to perform his past relevant work but had the residual functional capacity to perform a full range of sedentary work, and therefore he was not entitled to disability insurance benefits.

The law judge's decision was appealed to the Appeals Council and the Council adopted findings and conclusions of the administrative law judge.

The Report and Recommendation of the magistrate, which I accepted as factual and adopt as part of the findings of fact in this case, is that there were no contrary reports upon which the administrative law judge could have acted in support of his decision to deny the plaintiff's claim, and this was so in spite of the fact that the law judge is required to consider a claimant's symptomatology even if it is not accompanied by objective medical data. *Bittel v. Richardson, supra.* The law judge's decision contained no analysis of the evidence as is required by law. *Dobrowolsky v. Califano,* 606 F.2d 403, 409, C.A.3, 1979. The fact that the law judge had been able to see the plaintiff at the hearing and that the plaintiff was able to tolerate sitting throughout the hearing without *showing* any pain is not sufficient to displace supportive evidence which the administrative law judge must have to make such a determination. *Van Horn v. Schweiker,* 717 F.2d 871, C.A.3, 1983.

In *Van Horn, supra,* pursuant to *Freeman v. Schweiker,* 681 F.2d 727, 731, C.A. 11, 1982, the court criticized an administrative law judge's reaching "his conclusion by relying solely on his own non-expert observations at the hearing—in other words, by relying on the soundly condemned 'sit and squirm' method of deciding disability cases." What is to be dispraised most is the fact that a hearing officer, such as the administrative law judge, will without out support of evidence, take it upon himself after only seeing a witness at a hearing, to say as did the law judge here, that the claimant at the hearing indicated no symptomatology that he was experiencing chest pains or back pains as that to which he had testified, or without any evidence to

---

1. An employer would be hard put to employ such an individual for any kind of employment

under these circumstances.

support it.[2] He may not say "The preponderance of the credible evidence of record indicates that claimant's heart and back conditions have not been of such severity so as to preclude claimant's ability ..." Administrative Law Judge's Opinion, May 18, 1983.

If a judicial officer, who is not a medical expert, without any supporting evidence, attempts to decide what is pain or its severity, such decision, as a matter of record, must be struck down. It is an opinion within the competence of the best medical experts to lay down understandable and significant descriptions[3] of what pain and its severity may be. All of us on occasion have struck our thumbs accidently, or our so-called "crazy bone"[4] in the elbow, and as of that moment suffered torturous pain. That pain, however, could never be felt by those who only looked on; nor could it have been so easily defined afterwards by the person who suffered it, with the statement "It hurt! Oh! It hurt badly!"

Even dictionaries give us no ability to actually feel pain, such for instance, that pain is "An unpleasant sensation, occurring in varying degrees of severity, as a consequence of injury, disease, or emotional disorder", or, also, "suffering or distress". *The American Heritage Dictionary of the English Language*, page 942, 1969.

*Webster's New Dictionary of Synonyms*, page 589, 1978, describes pain in its various forms and applies such names to it as ache, pang, throe, twinge and stitch; agony, distress, suffering, passion, anguish and the like. When describing the word "throe" (as of labor and child birth), and because of its association with labor, the dictionary says, "... the term usually designates a violent and convulsive, as well as a recurrent pain ..."

*Webster's Third New International Dictionary, Unabridged*, page 1621, 1966, attempts to compare pain in its various forms. One of its definitions probably provides the best description,[5] "2a: a state of physical or mental lack of well-being or physical or mental uneasiness that ranges from mild discomfort or dull distress to acute often unbearable agony, may be generalized or localized, and is the consequence of being injured or hurt physically or mentally or of some derangement of or lack of equilibrium in the physical or mental functions (as through disease) and that usu. (sic) produces a reaction of wanting to avoid, escape or destroy the causative factor and its effect ... which had been merely a dull ache, was suddenly as keen as if a blade had been driven into her wound".

And yet, after reading such descriptions, they instill no feeling. Thus, the layman-victim in testifying as a witness in a judicial proceeding, who speaks of his pain with its incapacitating results, does not have the capability of causing another layman to visualize or sensualize what the witness himself feels, or its effects upon his being.

I have searched *The Merck Manual, Fourteenth Edition*, 1982, the handbook of the medical profession, for a clear definition of what pain is but it refers to the focal bodily parts in which pain occurs by reason of injuries or ailments and describes[6] each of these throughout the Manual (See Index "P" at page 2540).

Our courts also realize the complexity of pain and the determination of what constitutes disabling pain. That is so because, as has been said in *Marcus v. Califano*, 615 F.2d 23, 28, C.A.2, 1979, there is no "average person" standard for pain. Also, it was said in *Ber v. Celebrezze*, 332 F.2d 293, 299, C.A.2, 1964, "What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another human being a degree of pain so unbearable as to subject him to unrelenting

2. The plaintiff's medical experts prove this statement to be untrue.

3. Descriptions but not definitions.

4. Where the ulnar nerve surfaces.

5. Description but not definition.

6. Describes but does not define.

misery of the worst sort". It is common knowledge that some individuals are stoics—that is, they characteristically show indifference to pleasure or pain.

It has also been recognized that pain is variable and may be unbearable at one moment and less intense at another. It was also recognized in *Olson v. Schweiker*, 663 F.2d 593, 597, C.A.5, 1981, "We must recognize that the definition of a disability is not limited to cases where the sufferer is in intense pain every day. The nature of some disabilities dictates that there will be some good days but a very large number of excruciatingly bad days."

And so it has been held that objective medical evidence as the underlying cause of pain is not necessarily required. *Aubeuf v. Schweiker*, 649 F.2d 107, 108, 112–13, C.A.2, 1981. So, too, it was held in *Marcus v. Califano, supra*, "that a claimant's impairment is not of a type that ordinarily causes disabling pain, is not sufficient reason to conclude that it does not cause the claimant severe pain."

Further, it has been said in *Stubbs v. Mathews*, 544 F.2d 1251, 1255–56, C.A.5, 1977, "... although the administrative law judge's determination of credibility is entitled to weight, benefits may not be denied in the face of uncontradicted evidence supporting the claimant's subjective testimony."[7]

Also, in *Wiggins v. Schweiker*, 679 F.2d 1387, 1391, C.A.11, 1982, "Failure to give subjective evidence of pain due consideration, because of the belief that such evidence must be corroborated by objective findings, has frequently been held to be reversible error".

It is also appropriate here that I repeat what I said in *Mosey v. Califano*, 490 F.Supp. 1165, 1169 (W.D.Pa., 1980), and in *Lightcap v. Celebrezze*, 214 F.Supp. 209 (W.D.Pa., 196d2), in quoting Judge Kalodner in *Goldman, Admis. of Estate of Goldman v. Folsom*, 246 F.2d 776, 778, C.A.3, 1957, as follows:

" 'In discharging that duty we must keep in mind, as adjured by the Supreme Court, that 'courts must now assume more responsibility for the reasonableness and fairness' of decisions of federal agencies 'then (sic) some courts have shown in the past' and "Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function.' "

The plaintiff in this case, a 36 year old man at the time he was injured in an accident, sustained a back injury with low back and cervical strain and suffered from an arteriosclerotic heart disease causing chest pains; that he was compelled to wear an uncomfortable back brace; that his physical capacity for walking and exercising became nil; that he suffered from ASHD and gastritis, and that eventually matters worsened after the remand and after the second hearing before the administrative law judge; that he had neck, head, legs, back and shoulder pains; that his legs did not support him and caused him to fall; that in addition to chest pains, he was under stress and medication which gave him only slight relief; that physical therapy did give him some relief from the pain, but the pain would return; that he had no appetite but did eat one meal a day, and that his weight which had been 157 pounds at the time of his injury had fallen to 122 and ½ pounds at the date of his rehearing.

While no comment was made by the administrative law judge on the weight loss in the evidence, it is common knowledge that loss of weight can be due only to voluntary or compulsive starvation or dieting, as the case may be. But when it occurs in the case of this particular plaintiff no such evidence exists, but the circumstantial evidence is worthy of consideration that his weight loss occurred because of the physical, stressful suffering in accordance with the plaintiff's own testimony.

---

**7.** Here the claimant produced both objective proof and consequent subjective proof of his bodily infirmities and their affects as a totality.

There is medical evidence upon the part of the plaintiff which supports his claim medically and there is no evidence before the administrative law judge to contradict it.

Under all the circumstances and the law as it applies to the evidence in this case, the findings of the administrative law judge, after the second hearing, must fall for lack of support. The motion of the plaintiff for summary judgment will be granted, and judgment entered for the plaintiff.

## MAGISTRATE'S REPORT AND RECOMMENDATION

### November 19, 1984

ILA JEANNE SENSENICH, United States Magistrate.

### I. RECOMMENDATION

It is recommended that defendant's motion for summary judgment be denied, that plaintiff's motion for summary judgment be granted and that the decision of the Secretary, denying plaintiff's application for disability insurance benefits, be reversed.

### II. REPORT

This is an action timely filed under the Social Security Act, 42 U.S.C. Section 405(g), for review of a decision of the Secretary of the Department of Health and Human Services, finding that plaintiff is not totally and permanently disabled due to low back and cervical strain and arteriosclerotic heart disease causing chest pains.

This is the second time this action has been before this court for consideration. On September 14, 1982, the court adopted the report and recommendation of the magistrate dated August 20, 1982, denied defendant's motion for summary judgment, denied plaintiff's motion for summary judgment and remanded this action to the Secretary for reconsideration. A copy of the report and recommendation of August 20, 1982, is attached hereto and incorporated herein.

Following remand the Secretary remanded this action to an administrative law judge who conducted another hearing on December 21, 1982. During that hearing plaintiff testified that he had pain in both legs and his lower back which went into his neck and head (Tr. 185). The pain goes down into his left shoulder and left arm (Tr. 186). His condition has been worse since he had surgery. His legs collapse at the knee and he falls down (Tr. 186). His left leg gives away more than his right leg. At the time of the hearing this had been happening for 3½ years. During 1982 he had fallen down the stairs at least three times. This also happens when he is walking on the level (Tr. 188). Plaintiff described his current medications. He was taking a muscle relaxer, pain medications, a sleeping pill, sorbitrates, inderal and nitroglycerin. His chest pain occurs only when he is under extreme stress (Tr. 193). His medication gives him only slight relief from his pain. He gets physical therapy three times a week. This is moist heat and massage (Tr. 194). He had been getting physical therapy since 1976. It gives him relief from the pain for a few hours. Then the pain returns. He cannot stand longer than ½ hour (Tr. 198). He cannot walk more than two blocks on the level and cannot pick an object off the floor without a lot of pain (Tr. 199). He could lift five pounds from the table. The total weight he could lift would be ten pounds (Tr. 200). He can sit up to thirty or sixty minutes, depending on his position (Tr. 201). He can care for his own personal needs (Tr. 202). He can drive his car for about ten minutes. He goes shopping and to the doctor. He goes shopping with his wife and she picks objects up (Tr. 203). Some of his medications make him drowsy. At the time of the hearing his weight was 122½ pounds. It had been 157 when he was injured. He was 5'11" tall. He testified that he has no appetite and eats just one meal a day.

Plaintiff's counsel submitted for consideration a report of Dr. Holland dated December 29, 1981, in which he reported that plaintiff's complaints continued essentially unchanged. His neck and upper back pain and headaches were acute at times and less

troublesome at others. He continued to receive physical therapy and was taking various pain medications and muscle relaxants. His overall condition was essentially unchanged. His overall prognosis was poor (Tr. 207). Submitted also was a report by Dr. Holland dated February 17, 1983, stating that he felt plaintiff was unable to engage in any substantial gainful activity (Tr. 209). Following the hearing the administrative law judge filed a recommended decision in which he found that plaintiff was unable to perform his past relevant work but had the residual functional capacity to perform a full range of sedentary work. Therefore he found that plaintiff was not entitled to disability insurance benefits. Plaintiff appealed to the Appeals Council which adopted the findings and conclusions of the administrative law judge.

The report and recommendation of August 20, 1982, noted that plaintiff had satisfied his burden of showing his inability to return to his former work and the burden had shifted to the Secretary to show other work he could perform. The reports by Dr. Holland expressing his opinion that plaintiff could not perform any work were entitled to substantial weight. There were no contrary reports and the administrative law judge was required to explain his reasons for rejecting uncontradicted medical evidence. The judge had failed to identify the evidence he was referring to when he commented that he rejected the opinion of Dr. Holland because his conclusions were "clearly contrary to the weight of the evidence, which indicates that the claimant can engage in at least sedentary work activity." In that report it was noted that in the Third Circuit the judge is required to consider a claimant's symptomatology even if it is not accompanied by objective medical data. Since he failed to do so, it was recommended that the action be remanded. It was further noted that pain itself can be a disabling condition and the judge had failed to make any findings relating to plaintiff's complaints of disabling pain.

The recommended decision of the administrative law judge dated May 18, 1983, contained no analysis of the evidence as required by the Third Circuit. *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979); *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir.1974); *Hargenrader v. Califano,* 575 F.2d 434 (3d Cir.1978). He commented only that plaintiff had been able to tolerate sitting throughout the hearing without showing any pain. The court of appeals has rejected the "sit and squirm" test. *Van Horn v. Schweiker,* 717 F.2d 871 (3d Cir.1983). The only analysis by the judge was the following:

> [T]he preponderance of the credible evidence of record, including observation of claimant at the hearing, indicates that any symptomatology "claimant has experienced such as chest pain when exposed to excessive stress or back pain, has not been of such severity so as to contra-indicate his ability to engage in substantial gainful activity and that said pain has not, in and of itself, been disabling within the meaning of the law and regulations."

> The preponderance of the credible evidence of record indicates that claimant's heart and back conditions have not been of such severity so as to preclude claimant's ability to engage in sedentary work or heavy lifting, prolonged walking or standing and exposure to industrial hazards would not be required.

This analysis would appear to be inadequate in light of the reports of Dr. Holland expressing his opinion that plaintiff could not work. The Appeals Council held that it could not consider plaintiff's symptoms unless a specific symptom was established by clinical and laboratory data. Functional limitations must be accessed on the basis of objective physical findings. This is clearly contrary to Third Circuit law which requires the Secretary to give weight to testimony of subjective pain when it is supported by competent medical evidence. *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). *See also, Bittel v. Richardson,* 441 F.2d 1193 (3d Cir.1971); *Taybron v. Harris,* 667 F.2d 412, 415, n. 6 (3d Cir. 1981); *Podedworny v. Harris,* 745 F.2d 210 (3d Cir.1984). Since the Appeals Council

has indicated an inability to comply with Third Circuit law another remand would be pointless. The Secretary did not produce evidence to rebut the reports of Dr. Holland in which he expressed his opinion plaintiff was totally and permanently disabled. Therefore, it is recommended that defendant's motion for summary judgment be denied, that plaintiff's motion for summary judgment be granted and that the decision of the Secretary, denying plaintiff's application for disability insurance benefits, be reversed.

In accordance with the Magistrates Act, 28 U.S.C. Section 636(b)(1)(B) and (C), and Rule 4 of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation.