NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4733
_____

JOSEPH HARKINS,

Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY

Appellee.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 08-cv-6418)
District Judge:  Hon. Jose L. Linares
_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2010

Before:   SCIRICA, FUENTES and JORDAN, *Circuit Judges*.

(Filed: October 8, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Joseph Harkins appeals from a decision of the United States District Court for the

District of New Jersey affirming the order of an Administrative Law Judge ("ALJ")

denying Harkins's claim for disability insurance benefits.  For the following reasons, we will affirm.

## I.     Background

Because we write solely for the parties and assume their familiarity with the case, we will discuss only those facts necessary to our decision.  Harkins claims that he became disabled on July 7, 2000, due to a work-related back injury.  Later, on November 21, 2000, Harkins underwent a microscopic disc excision, performed by Dr. Joseph Lombardi.[1]  Harkins "tolerated the procedure well."  (AR at 189.)  Shortly thereafter, on December 20, 2000, Harkins made his initial application for disability insurance benefits (the "Initial Application").  The Initial Application was denied on February 21, 2001, and the denial was not appealed.  On December 31, 2003, Harkins's eligibility for disability insurance benefits expired.[2]

On February 17, 2006, Harkins again applied for disability insurance benefits (the "2006 Application").  Because Harkins's eligibility for disability insurance benefits had expired on December 31, 2003, he could receive benefits only if he showed that he

---

[1]Dr. Lombardi had also performed a disc excision on Harkins on January 20, 1992, as a result of a 1990 work injury.

[2]Under 42 U.S.C. § 223(c)(1), individuals are only eligible for disability insurance benefits if they have earned sufficient working credits during the previous ten years. Harkins does not contest that his eligibility for disability insurance benefits expired on December 31, 2003.

became disabled between February 21, 2001 – the date the Initial Application was denied – and December 31, 2003.

In support of the 2006 Application, Harkins submitted medical records showing that he received treatment for back pain at various times between 1990 and the time of the application. The treatment was not continuous, however, and the medical records reflect that Harkins did not receive treatment for his back between the relevant dates of February 21, 2001 and December 31, 2003. In fact, following Harkins's November 21, 2000 surgery, his records showed no treatment until after April 27, 2004. On that date, Harkins visited the ER as a result of a car accident, and a subsequent MRI showed injuries to several discs in his back. On August 18, 2004, Harkins sought pain treatment from Dr. Lombardi, who reported that Harkins's "[p]ain began from a car accident," and that the "[c]ondition ha[d] existed since 4 months and since the [car] accident." (AR at 215.) Harkins continued to receive pain treatment from Dr. Lombardi every few months through August of 2006. Dr. Lombardi's notes for each of those visits indicated that Harkins began experiencing pain after the April 2004 car accident.

In connection with the 2006 Application, Harkins also completed reports on his work history and on daily tasks that he was able to perform, despite his claimed disability. Harkins reported that, prior to July 7, 2000, he had worked for twenty-five years in carpentry and auto body work, but that he had not worked since July 7, 2000. Despite reporting that he was incapable of doing any kind of activity for more than a short period

3

of time, Harkins reported that his daily activities consisted of dropping off and picking up his daughter from school, washing dishes for fifteen minutes at a time, and dusting and vacuuming for five minutes at a time. He also reported that he could lift up to fifteen pounds. His wife also completed a report, stating that Harkins was able to do light dusting, wash dishes, and fold clothes.

After being reviewed at both the initial stage, and again on reconsideration, the 2006 Application was denied on December 20, 2006. At Harkins's request, his claim was submitted to an ALJ, and a hearing was held on May 2, 2007. At the hearing, Harkins testified that his symptoms resumed approximately two years after his November 21, 2000 surgery. He testified that everything made his pain worse. He testified that if he stood or sat for more than fifteen minutes at a time, he would get numbness or stabbing pains in his feet, and that if he turned his neck too fast, he would get stabbing pains in his neck. He testified that he could no longer get prescription medication for his pain because, in January of 2007, his wife lost her job and, consequently, the family lost its medical insurance. Harkins also testified that he spent his day doing chores around the house, including taking out the garbage, folding clothes, doing dishes for ten minutes at a time, and exercising when he could.

On July 2, 2007, the ALJ denied Harkins's claim for disability benefits. In so doing, the ALJ followed the five-step sequential analysis required under 20 C.F.R.

4

§ 404.1520.[3] At steps one through three, the ALJ determined that Harkins (1) had not been working since the alleged date of disability, and (2) had a severe impairment prior to December 31, 2003, but (3) did not have one of the impairments designated by the relevant regulations as warranting an automatic finding of disability.

Turning to its assessment of Harkins's residual functional capacity ("RFC"), the ALJ first found that Harkins's subjective complaints of pain were not credible because, although Harkins claimed to have had disabling pain prior to December 31, 2003, the record was "devoid of any clinical findings or evidence of ongoing treatment for a back impairment." (AR at 14.) Additionally, although Harkins testified that his pain resumed two years after his November 21, 2000 surgery, he had reported to Dr. Lombardi on August 18, 2004, that it was associated with his April 27, 2004 car accident. (*Id.*) In light of this, the ALJ found that the evidence supported "the claimant's **current** complaints of back pain," but that the evidence showed that the pain was "related to his

---

[3]At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled, and the inquiry ends. At step two, the ALJ considers whether the claimant suffers from a severe medical impairment. If not, the claimant is not disabled, and the inquiry ends. At step three, the ALJ considers whether the impairment is equivalent to those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If it is, the claimant is automatically considered disabled, and the inquiry ends. If not, the inquiry moves on to step four. At step four, after assessing the claimant's residual functional capacity, the ALJ considers whether that residual functional capacity enables the claimant to perform past relevant work. If it does, the claimant is not disabled, and the inquiry ends. Finally, at step five, the ALJ considers whether, based on the claimant's residual functional capacity, age, and education, there is sufficient work available in the national economy. If so, the claimant is not disabled. Otherwise, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4).

automobile accident in April 2004." (*Id.* (emphasis in original).) The ALJ also found that Harkins's subjective complaints were inconsistent with his daily activities, which the ALJ identified as "dropping off and picking up his daughter; doing household chores such as washing dishes, taking out the garbage and folding clothes; and exercising when he can." (*Id.* at 13-14.) Consequently, the ALJ determined that Harkins's complaints of disabling pain prior to December 31, 2003 "cannot be reasonably accepted." (*Id.* at 14.)

Although the ALJ found that Harkins's pain was not disabling prior to December 31, 2003, the ALJ did not conclude that he had been entirely pain free. Rather, the ALJ concluded that due to "some pain and limitations ... his capacity to perform work was significantly affected." (*Id.*) The ALJ found, however, that despite those limitations Harkins still "had the capacity to function adequately to perform many basic activities associated with work," and consequently determined that he "retained the residual functional capacity to perform a full range of sedentary work."[4] (*Id.*)

Based on that RFC assessment, the ALJ then completed steps four and five, finding that (4) prior to December 31, 2003 Harkins's RFC did not enable him to perform his past work as a carpenter or auto-body worker, but (5) given Harkins's RFC, education, and age, there was a full range of sedentary work available in the national economy that he was capable of doing, and, therefore, Harkins was not disabled.

_____

[4]Although it was not directly tied to the time period in question, the ALJ also noted that in 2005 – after the car accident – Dr. Lombardi cleared him to work without any restrictions. This too suggests that prior to December 31, 2003 – before the car accident – Harkins retained the ability to do sedentary work.

After his subsequent request for review by the Appeals Council was denied, Harkins appealed to the District Court. The District Court affirmed, finding that there was substantial evidence to support the ALJ's finding that Harkins was not disabled prior to December 31, 2003. Harkins then timely filed this appeal.

## II.    Discussion[5]

When reviewing a District Court's affirmance of an ALJ's decision, our role is identical to that of the District Court, in that we must determine whether substantial evidence supports the ALJ's decision. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d. Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To facilitate appellate review, the ALJ is required to discuss "the evidence he considered which supports the result" and "the evidence which was rejected," *Cotter v. Harris*, 642 F.2d 700, 705 (3d. Cir. 1981), and must also give his reasons for accepting some evidence while rejecting other evidence. *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978).

On appeal, Harkins offers two arguments for why the ALJ's decision should be reversed and a new hearing granted. First, he argues that the ALJ failed to give proper

---

[5]The District Court had jurisdiction to review the Social Security Administration's decision pursuant to 42 U.S.C. § 405(g), and we have jurisdiction pursuant to 28 U.S.C. § 1291.

7

consideration to subjective complaints of pain. Second, he argues that the ALJ failed to offer a sufficient evidentiary basis for the RFC assessment.

     A.     *The ALJ Properly Considered Harkins's Subjective Complaints of Pain*

Harkins asserts that the ALJ failed to adhere to Third Circuit decisions and Social Security Administration regulations when he rejected Harkins's subjective complaints of pain. We disagree.

Our prior decisions have held that, although "[t]estimony of subjective pain and inability to perform even light work is entitled to great weight," *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979), an ALJ may nonetheless reject a claim of disabling pain where he "consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990). Here, the ALJ considered Harkins's subjective complaints but rejected the complaints as not credible because (a) the medical evidence showed that he had not sought any treatment whatsoever for pain during the relevant time period[6] and (b) Harkins's testimony that his pain returned two years after his 2000 surgery conflicted with the report of Dr. Lombardi – based at least in part on Harkins's own statements – that the pain stemmed from Harkins's 2004 car accident. The

---

    [6]Harkins claims that the ALJ should not have considered Harkins's failure to seek treatment before December 31, 2003, because that failure was a result of his loss of medical insurance after his wife lost her job. According to Harkins's testimony, however, his wife lost her job and insurance in January of 2007 – more than three years after the expiration of his eligibility for disability insurance benefits.

ALJ also considered Harkins's ability to perform daily tasks, such as "dropping off and picking up his daughter; doing household chores such as washing dishes, taking out the garbage and folding clothes; and exercising when he can." (*Id.* at 13.) Thus, the ALJ properly considered Harkins's testimony, weighed it against conflicting evidence in the record, including medical evidence, and specified his reason for rejecting Harkins's subjective complaints of pain. The ALJ's process and his conclusions were consistent with the standard articulated in our prior decisions.

The ALJ's decision is also consistent with the regulations set forth in C.F.R. § 404.1529, as clarified in Social Security Ruling 96-7p. Social Security Ruling 96-7p states that the ALJ may not reject a claimant's testimony with merely "a single conclusory statement" or a bare recitation of "the factors that are described in the Regulations for evaluating symptoms." SSR 96-7p. Rather, the decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.* The ALJ did as required under SSR 96-7p, explaining that he found Harkins's testimony not credible because it conflicted with the medical evidence and with the evidence of Harkins's ability to perform daily tasks. The decision made clear to both Harkins and to subsequent reviewers, such as this Court, that Harkins's complaints of disabling pain were not accepted because they conflicted with the other evidence in the

9

record.  Consequently, we find that the ALJ gave proper consideration to Harkins's subjective complaints of pain and that the ALJ's conclusion was supported by substantial evidence in the administrative record.

B.    *The ALJ Articulated a Sufficient Evidentiary Basis for his RFC Assessment*

With respect to the ALJ's RFC assessment, Harkins argues that the ALJ offered no evidentiary basis for his assessment.  [BB at 4-10.]  Again, we disagree.  We view the issue as being essentially resolved by our conclusion that the ALJ properly rejected Harkins's claims of subjective pain, because, in this case, Harkins's subjective complaints of pain constituted the only affirmative evidence of disability between February 21, 2001 and December 31, 2003.  There is no medical evidence of treatment during that time. There is a record of surgery shortly before February 21, 2001, but the evidence shows that Harkins "tolerated the procedure well" and did not seek follow up treatment.  There is also evidence of treatment after December 31, 2003 but, as already noted, the evidence shows that the treatment was for pain associated with an April 27, 2004 car accident. Consequently, the only evidence that Harkins suffered from disabling pain during the relevant period was his subjective complaints of pain, which the ALJ appropriately rejected.

Finally, the ALJ also concluded that Harkins "had the capacity to function adequately to perform many basic activities associated with work."  That conclusion was supported by the finding that Harkins was able to engage in a wide range of simple tasks

such as "dropping off and picking up his daughter; doing household chores such as washing dishes, taking out the garbage and folding clothes; and exercising when he can." (*Id.* at 13-14.) Those findings, taken together, form an adequate evidentiary basis to support the ALJ's assessment. In short, substantial evidence supports the conclusion that Harkins "retained the residual functional capacity to perform a full range of sedentary work." (AR at 14.)

## III.    Conclusion

For the reasons set forth above, we conclude that substantial evidence in the record supports the ALJ's decision and that the ALJ sufficiently articulated the evidentiary basis for his decision. We will therefore affirm the order of the District Court upholding the ALJ's decision.