NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1335
_____

MYRA JOHNSON,
                    Appellant

v.

COMMISSIONER OF SOCIAL SECURITY


_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 08-cv-04901)
District Judge:  Hon. William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
October 5, 2010

Before:   SCIRICA, FUENTES and JORDAN, *Circuit Judges.*

(Filed: October 27, 2010)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

    Myra Johnson appeals from an order of the United States District Court for the

District of New Jersey affirming the decision of an Administrative Law Judge ("ALJ")

denying Johnson's claim for supplemental security income.  For the following reasons,

we will affirm.

1

**I. Background**

Following a series of hospitalizations for various cardiac, pulmonary, and renal impairments, Myra Johnson filed a claim for supplemental security income[1] on November 18, 2005, alleging disability beginning on October 1, 2005. Her claim was denied on April 12, 2006, and again upon reconsideration on September 27, 2006. At Johnson's request, a hearing was held before an ALJ on March 13, 2008.

In conjunction with her hearing, Johnson submitted extensive medical records. Those records showed that between October 2, 2005 and October 31, 2005, Johnson made three trips to the emergency room, complaining of difficulty breathing as well as back and chest pain. During those visits, Johnson was diagnosed with cardiomegaly, elevated blood pressure, and possible pneumonia. The records also document that she had been inconsistent in taking prescribed medication and that she had tested positive for cocaine use during two of her visits.

On November 8, 2005, Johnson was admitted to the intensive care unit, again complaining of shortness of breath. During her stay, she was diagnosed with

---

[1]Johnson is applying for Supplemental Security Income ("SSI"), as opposed to Social Security Disability Insurance ("SSDI"). While both provide benefits to disabled persons, under SSI, eligibility for benefits and the amount of benefits is based on financial need, 20 C.F.R. § 416.1100, whereas, for SSDI, eligibility and the amount of benefits are based on credits earned for prior Social Security taxable work. 20 C.F.R. § 404.101. The evaluation of the disability itself, however, is the same under either program. *Compare* 20 C.F.R. § 416.920 *with* 20 C.F.R. § 404.1520 . Likewise, the standard of review is the same. *Compare* 42 U.S.C. § 405 (g) (providing the standard of review for decisions regarding SSDI benefits) *with* 42 U.S.C. § 1383(c)(3) (stating that review of a decision regarding SSI benefits "shall be subjected to judicial review as provided in section 405 (g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title").

cardiomyopathy, hypertension, renal insufficiency, and impaired left ventricular function. Her records showed that she remained noncompliant with her medication and that her symptoms had been exacerbated by substance abuse. After treatment, including drugs and IV fluids, her "labs were normal" and she was "cleared for discharge by cardiology." (AR at 113.) On November 17, 2005, she was sent home clinically stable with instructions for an extensive drug regimen.

She returned to the emergency room on December 7, 2005, complaining of chest and stomach pain after heavy drinking. A chest exam showed normal heart size and rhythm, and her health was reported as good.

On February 27, 2006, Dr. R. C. Patel, a state retained physician, examined Johnson in connection with her disability claim. Dr. Patel's report mentioned Johnson's history of asthma, but his tests showed her pulmonary function to be above 90 percent of expected functionality. He reported that she claimed to experience daily chest pain and had a history of congestive heart failure, but chest x-rays showed nothing abnormal and his examination found normal heart rhythm, with a possible murmur. Based on his examination, he diagnosed Johnson with hypertension, "atypical" chest pain, and histories of asthma and congestive heart failure.

On April 11, 2006, a state retained medical consultant performed a residual functional capacity ("RFC") assessment based on Johnson's medical history. He found that she could lift up to twenty pounds occasionally and ten pounds frequently; she could stand, walk, or sit about six hours in a day; she had no limitations on pushing or pulling; and there were no established limitations on her ability to reach in all directions or to

3

engage in fine or gross manipulation. He determined that she needed to avoid concentrated exposure to pulmonary irritants.

Johnson again reported to the emergency room on June 13, 2007, complaining of chest pain. Examination revealed regular heart rate and rhythm with no abnormal sounds or murmurs. The treating physician described her pain as "very atypical," stating that there was a "[s]trong emotional component" to her complaints and that she "fe[lt] much better after reassurances ... and want[ed] to go home." (AR at 294, 296.)

On January 21, 2008, Dr. Mandeep Oberei, Johnson's treating physician, ordered tests that showed her left ventricular ejection fraction was 68%, which was considered to be normal. On February 22, 2008, Dr. Oberei submitted a letter on behalf of Johnson's application. He reported that, despite medication, her day-to-day function was still difficult and he believed she was unable to work. On March 2, 2008, Dr. Oberei submitted his own RFC assessment for Johnson, reporting that she could lift only ten pounds, could stand for only three hours daily, and had only limited ability to reach, handle, or push and pull objects. He reported that her impairments did not affect her ability to sit but also reported that she could sit for only four hours daily. For each of these assessments, Dr. Oberei's medical findings were either cursory or absent.

As part of her application, Johnson also completed reports and testified about her pain, daily activities, and other relevant personal information. She reported that she suffered from back pain that sometimes lasted all day. She stated that doing anything other than sitting – even moving her arms – caused tiredness, shortness of breath, chest pains, and dizziness. Regarding her education and work history, Johnson reported that

4

she never completed the 10th grade and that she had not worked since 1987. Finally, Johnson testified that her positive cocaine tests in 2005 must have been false positives based on her prescription medication, as she had not used cocaine for at least thirteen years.

On March 27, 2008, the ALJ issued an opinion finding that Johnson was not disabled and denying her claim. The ALJ arrived at his decision by following the five-step sequential analysis required under 20 C.F.R. § 404.1520.[2] At step one, the ALJ determined that Johnson had not been engaged in any substantial gainful activity since she filed her application. At step two, the ALJ determined that Johnson had severe impairments involving heart disease, renal disease, and asthma. At step three, the ALJ determined that Johnson's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").

In reaching his step three determination, the ALJ examined Johnson's medical records and concluded that her impairments, whether individually or in combination, each failed to meet a key element of the relevant Listing. For example, he concluded that

---

[2]At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled, and the inquiry ends. At step two, the ALJ considers whether the claimant suffers from a severe medical impairment. If not, the claimant is not disabled, and the inquiry ends. At step three, the ALJ considers whether the impairment is equivalent to those listed in 20 C.F.R. Part 404, subpart P, Appendix 1. If it is, the claimant is considered presumptively disabled, and the inquiry ends. If not, the inquiry moves on to step four. At step four, after assessing the claimant's RFC, the ALJ considers whether that RFC enables the claimant to perform past relevant work. If it does, the claimant is not disabled, and the inquiry ends. Finally, at step five, the ALJ considers whether, based on the claimant's RFC, age, education, and work experience there is sufficient work available in the national economy. If so, the claimant is not disabled. Otherwise, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4).

Johnson's cardiac impairments did not meet the requirements for Listings 4.02 (chronic heart failure) or 4.04 (ischemic heart disease) because she did not "exhibit the diminished level of left ventricular ejection fraction and other dysfunction," "the inability to perform an exercise tolerance test," or other necessary symptoms under those Listings. (AR at 15.) Similarly, he concluded that she did not meet the requirements of 6.02 (impairment of renal function) because she did not "require chronic dialysis, or kidney transplantation, or exhibit persistently elevated serum creatinine levels." (*Id.*) Finally, he concluded that she did not meet the requirements of 3.03 (asthma), because there was no evidence of "chronic asthmatic bronchitis" and she had not sought "physician intervention, occurring at least once every two (2) months." (*Id.*) As a result, the ALJ concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in [the Listings.]" (AR at 15.)

At step four, the ALJ performed his own RFC assessment, determining that Johnson retained the functional capacity to engage in sedentary work with environmental limitations.[3] In making his assessment, the ALJ considered a significant volume of medical and testimonial evidence, much of which was contradictory. First, the ALJ

---

[3]The ALJ viewed the RFC assessment as being an intermediate task between steps three and four, rather than being part of step four. (AR at 14.) This Court has not definitively stated whether the RFC assessment is an intermediate task or part of step four. *Compare, e.g., Titterington v. Barnhart*, 174 Fed. Appx. 6, 10 (3d Cir. 2006) ("Before proceeding to step four, the ALJ determined Titterington's RFC.") *with Johnson v. Comm'r of Soc. Sec.*, 263 Fed. Appx. 199, 201 (3d Cir. 2008) ("The fourth step is an assessment of the claimant's residual functional capacity.") Because we find it simpler to consider the RFC assessment with step four, we will treat the RFC assessment as part of step four.

considered the medical evidence with respect to Johnson's cardiac, renal, and pulmonary impairments. With respect to her cardiac impairments, he found that recent tests showed "[h]er left ventricular systolic function or ejection function was very high (68%)" and that her congestive heart disease had "resolved in November 2005 ... with no evidence of recurrence or the need for additional hospital admission." (AR at 18.) Likewise, he concluded that her renal insufficiency had resolved "in November 2005 ... with no evidence of recurrence." (*Id.*) He also found that her cardiac and renal symptoms had been exacerbated by non-compliance with her medications and by substance abuse, which weakened her claim of disability. Finally, with regard to her pulmonary impairment, he found that her most recent test showed normal pulmonary function and that, since October 2005, she had not sought any "treatment of ... asthma-related respiratory distress" and had made "no asthma-related hospital emergency room visits." (*Id.*) Consequently, he found that the medical evidence did not show an inability to work.

The ALJ next rejected Dr. Oberei's RFC determination and his letter stating that Johnson could not work, concluding that those assessments were unpersuasive. The ALJ explained that Dr. Oberei's RFC was internally inconsistent – first stating that there were no restrictions on sitting and then stating that Johnson could sit only four hours in a day – and that Dr. Oberei had failed to cite medical findings to support his assessments. The ALJ also rejected much of Johnson's subjective complaints about her symptoms, finding them to be only "partially credible." (AR at 19.) He found that although Johnson had been diagnosed with heart problems, multiple physicians had called her chest pain "atypical." He found that the extent of her complaints regarding other symptoms (*e.g.*,

7

that even moving her arms caused shortness of breath) was unsupported by the objective medical evidence and was not credible. He also found that Johnson herself lacked credibility due to her testimony that she had not used cocaine for fourteen years, despite two recent positive tests. In the end, the ALJ lent "partial credence to claimant's ... complaints," concluding that Johnson's impairments could produce some of her symptoms but that her "statements concerning the intensity, persistence, and limiting effects of those symptoms [were] not credible." (AR at 19.)

The ALJ ultimately concluded that Johnson "retain[ed] the residual functional capacity to perform sedentary work activity with environmental restrictions." (AR at 19.) Specifically, he found that she had the capacity to lift and carry objects weighing up to ten pounds, sit for up to six hours a day, and stand for up to two hours a day, but that she could not be exposed to excessive pulmonary irritants. Completing step four, the ALJ determined that Johnson had no prior work experience within the past fifteen years, and, thus, could not perform her past relevant work.

At step five, the ALJ considered whether work existed in the national economy for someone of Johnson's RFC, age, education, and work experience. At Johnson's hearing, the ALJ had received testimony from a vocational expert to aid in that determination. The ALJ had asked the expert to consider a person with the ability to lift and carry up to ten pounds, sit for up to six hours per day, and stand or walk for up to two hours per day, but without exposure to excessive pulmonary irritants. The expert stated that there were approximately 14,000 jobs available to such a person in Johnson's metro area. The ALJ then asked the expert to consider someone with those same restrictions, but who also had

8

to take frequent breaks to catch her breath. With that additional limitation, the expert said there were no jobs available.

Based on that testimony the ALJ determined that there were sufficient jobs in the national economy for a person of Johnson's RFC, age, education, and work experience. Consequently, the ALJ determined that Johnson was not disabled.

After the Appeals Council denied her subsequent request for review, Johnson appealed to the District Court. The District Court affirmed the ALJ's decision, and Johnson timely filed this appeal.

## II.    Discussion[4]

When reviewing a District Court's affirmance of an ALJ's denial of benefits, we exercise plenary review of the District Court's legal decisions. *Allen v. Barnhart*, 417 F.3d 396, 397 (3d Cir. 2005). Like the District Court, we review the ALJ's factual findings only to determine if they are supported by substantial evidence. *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d. Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To ensure meaningful review, the ALJ must discuss "the evidence he considered which supports the result" and "the evidence which was rejected," *Cotter v. Harris*, 642 F.2d 700, 705 (3d. Cir. 1981), and must give his reasons

---

[4]The District Court had jurisdiction to review the Social Security Administration s decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291.

for accepting only some evidence while rejecting other evidence. *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978).

On appeal, Johnson argues that the ALJ's analysis was deficient with respect to steps three, four, and five. She argues that the step three analysis was deficient because the ALJ failed to account for the combined effect of her impairments. Next, she argues that the step four RFC assessment was deficient because the ALJ improperly disregarded her subjective complaints, improperly dismissed Dr. Oberei's opinions, and failed to articulate a sufficient evidentiary basis for the RFC assessment. Finally, she argues that the step five analysis was deficient because the ALJ failed to give a reason for considering the vocational expert's response to only one of the two hypothetical questions. We address each argument in turn.

A. *The ALJ's Step Three Assessment of the Combined Effect of Johnson's Impairments*

Johnson argues that the ALJ's step three analysis failed to adequately evaluate the combined effect of her individual impairments. In *Burnett v. Commissioner of Social Security*, we held that step three requires the ALJ to perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." 220 F.3d 112, 119 (3d Cir. 2000). In *Jones v. Barnhart*, we clarified that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format," but only to "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." 364 F.3d 501, 505 (3d Cir. 2004). Guidance also comes from 20 C.F.R. §

10

404.1526(b)(3), which provides that where a claimant has multiple impairments, the ALJ should "compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] combination of impairments is medically equivalent to that listing."

Here, the ALJ satisfied our standard from *Burnett* and *Jones* and adhered to the regulations in 20 C.F.R. § 404.1526(b)(3). The ALJ performed a thorough examination of Johnson's medical records and concluded that each impairment failed to meet a key element of the relevant Listing. These conclusions were supported by detailed findings articulated in the opinion. For example, the ALJ's conclusion that Johnson's heart did not "exhibit the diminished level of left ventricular ejection fraction and other dysfunction" as required by 4.02, was supported by the finding that "[h]er left ventricular systolic function or ejection function was very high (68%)." (AR at 15, 18.) The conclusion that Johnson's asthma did not require "physician intervention, occurring at least once every two (2) months," as required by 3.03, was supported by the finding that Johnson had not sought any "treatment of acute or chronic bouts of asthma-related respiratory distress" and had made "no asthma-related hospital emergency room visits ... in the past 2 ½ years." (AR at 16, 18.) Similarly, the conclusion that Johnson did not "require chronic dialysis, or kidney transplantation, or exhibit persistently elevated serum creatinine levels," as required by 6.02, was supported by the finding that "the medical record indicates that [Johnson's renal insufficiency] resolved in November 2005 ... with no evidence of recurrence." (AR at 15, 18.)

11

Based on that analysis, the ALJ concluded that Johnson did not have an "impairment or combination of impairments that [met] or medically equal[ed] any of the listed impairments." (AR at 15.) Thus, it is apparent that the ALJ thoroughly examined the medical evidence, compared it to the Listings, and made the dual determinations that (a) none of Johnson's impairments were individually equivalent to a Listing, and (b) there was no "closely analogous listed impairment[]" for which a "combination of impairments [was] medically equivalent." 20 C.F.R. § 404.1526(b)(3). Those detailed findings demonstrate "sufficient development of the record and explanation of findings to permit meaningful review."[5] *Jones*, 364 F.3d at 505.

> B. *The ALJ's Step Four RFC Assessment*

---

[5]Our conclusion is reinforced by Johnson's failure to identify any "closely analogous" Listing to which her combined impairments might be medically equivalent. Johnson attempts to do so for the first time in this appeal, arguing that the ALJ should have considered her impairments under Listing 4.03, for hypertension. (Appellant's Brief at 8.) Johnson argues both that (a) the ALJ "omit[ted] this Listing for no apparent reason", and (b) 4.03 required the ALJ to "discuss[] [Johnson's] heart disease in conjunction with her kidney disease." Even if Johnson has not waived these arguments by failing to raise them before the District Court, Johnson is mistaken on both counts.

First, the reason for the ALJ's omission is clear: 4.03 had been removed from the Listings in 2006 – two years before the ALJ considered Johnson's claims. *See* Revised Medical Criteria for Evaluating Cardiovascular Impairments, 71 Fed. Reg. 2318 (Jan. 13, 2006) ("We are deleting the following current cardiovascular listings ... 4.03, Hypertensive cardiovascular disease."). Second, to the extent the ALJ should have considered 4.03 because it was in effect when Johnson applied for disability, 4.03 did not impose any obligation to combine conditions or require the ALJ to "discuss[] [Johnson's] heart disease in conjunction with her kidney disease," as Johnson asserts. (Appellant's Brief at 8.) Rather, 4.03 was written in the disjunctive – stating that the ALJ should evaluate hypertension "under 4.02 *or* 4.04 *or* under the criteria for the affected body system." 20 C.F.R. Part 404, Subpart P, Appendix 1, Paragraph 4.03 (2005) (amended April 13, 2006) (emphasis added).

Johnson articulates three deficiencies with the ALJ's RFC assessment: (1) he improperly disregarded her subjective complaints, (2) he improperly dismissed Dr. Oberei's opinions, and (3) he failed to articulate a sufficient evidentiary basis for the RFC assessment.

### 1. The ALJ's Consideration of Johnson's Subjective Complaints

While a claimant's subjective complaints must be given serious consideration, *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981), they must also be supported by medical evidence. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992). An ALJ may reject a claimant's subjective complaints when the ALJ "specif[ies] his reasons for rejecting the[] claims and support[s] his conclusion with medical evidence in the record." *Matullo v. Bowen*, 926 F.2d 240, 245 (3d Cir. 1990).

Here, the ALJ considered Johnson's subjective complaints of both pain and other symptoms. He specifically recognized her complaints of regular chest pain and shortness of breath but found them to be inconsistent with the medical evidence, as two separate doctors found her pain to be "atypical" and Dr. Patel's tests showed her pulmonary function to be normal. The ALJ also found that Johnson lacked credibility due to her insistence that she had not used cocaine despite two recent positive tests. Consequently, the ALJ chose to accept the medical evidence and reject Johnson's testimony. That satisfies the requirements we set forth in *Matullo* for rejecting a claimant's subjective complaints, and we see no error in the rejection.

### 2. The ALJ's Consideration of Dr. Oberei's Opinions

13

Johnson argues that the ALJ also acted improperly in giving no probative weight to Dr. Oberei's opinions. We have held that the opinions of treating physicians should be given great weight, *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987), but that an ALJ "may reject a treating physician's opinion outright ... on the basis of contradictory medical evidence." *Plummer*, 186 F.3d at 429. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record. Otherwise, the opinion should be given weight proportional to the medical evidence presented by the treating physician to support the opinion. 20 C.F.R. § 416.927(d)(3). Because the ALJ found that Dr. Oberei presented no medical findings to support his opinions and because his opinions were inconsistent with the recent medical evidence showing Johnson's normal heart and lung functionality, it was not error for the ALJ to determine that Dr. Oberei's opinions were of no probative value.

### 3. *The Evidentiary Basis for the ALJ's RFC Assessment*

Next, Johnson argues that the ALJ failed to articulate a sufficient evidentiary basis for his RFC assessment. We disagree. The ALJ's assessment addressed each of Johnson's impairments, concluding that none of them would preclude all work activity. The ALJ supported his conclusion that her asthma would not preclude work by pointing to tests showing normal pulmonary function and to her lack of treatment for two and a half years. The ALJ supported his conclusion that her cardiac conditions would not preclude work by noting that her most recent diagnostic tests showed normal left ventricular systolic function. He supported his conclusion that neither cardiac nor renal

14

conditions would preclude work by citing the lack of any recurrence of those conditions or need for additional hospital admissions for more than two and a half years. The ALJ also found that Johnson's symptoms had been exacerbated by her failure to take recommended medication, and he cited to 20 C.F.R. § 404.1530, which precludes a finding of disability where a claimant fails to follow prescribed treatment. Finally, and as already discussed, the ALJ had a basis on this record to disregard Dr. Oberei's opinions and Johnson's own subjective complaints. Accordingly, the ALJ offered a sufficient evidentiary foundation for his assessment that Johnson retained the capacity to perform sedentary work with environmental restrictions.

C.    *The ALJ's Use of the Vocational Expert in Step Five*

Finally, Johnson argues that the ALJ failed to explain why he considered the vocational expert's answer to only one of the two hypothetical questions presented. It is true that the ALJ did not make his reason explicit, but only because it was obvious: the ALJ's RFC assessment did not include a need for Johnson to take frequent breaks. As a result, the second hypothetical, which included that restriction, was of no relevance.

## III.   Conclusion

For the foregoing reasons, we will affirm the District Court's order upholding the ALJ's decision.